James J. Phelan, Jr., et al., Plaintiffs-Appellees, v. University National Bank, Defendant-Appellant.

Gen. No. 51,107.

First District, Second Division.

June 27, 1967.

Rehearing denied July 31, 1967.

Philip A. Winston, of Chicago, for appellant.

Thomas R. McMillen, of Chicago (Bell, Boyd, Lloyd, Haddad & Burns, of counsel), for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Cook County against the University National Bank in the sum of $12,277.66. Judgment was also entered against Georgia Barlas in the sum of $15,694.70; she did not appeal. The basis of the judgment against the University National Bank was that the bank as a payor bank under the Uniform Commercial Code had failed to give timely notice of the dishonor of four drafts which were drawn on defendant Georgia Barlas. Succinctly stated, defendant University National Bank's theory on this appeal is that it was not a payor bank, but a collecting bank, and that it acted in conformity with the UCC and banking customs. Defendant, University National Bank, also contends that the plaintiffs were not entitled

to a recovery because they had ratified and confirmed the actions of the defendant.

The transactions which gave rise to this controversy were the sale of common stock by the plaintiffs, who are stockbrokers, to defendant Georgia Barlas. All of the purchases involved here were made by Mrs. Barlas' son, Kosta Barlas, who had a limited agency authorization to buy, sell and trade in stocks on behalf of his mother. All purchases were of Perfect Photo Common Stock listed on the American Stock Exchange. Between May 28, 1962, and December 31, 1962, a total of 4,600 shares were purchased on behalf of Mrs. Barlas by her son. Beginning on December 19, 1962, plaintiffs accepted the signature of Kosta Barlas alone on such delivery instruction letters without further authority or confirmation from Georgia Barlas.

In January 1963 a total of 11,300 shares of Perfect Photo were purchased by Kosta Barlas in the account of his mother. These shares were sent on different dates to University National Bank attached to five separate drafts, each of which represented a collective group of purchases put together by plaintiffs from time to time for delivery. Only the first four drafts are involved in this appeal.

The four drafts in this case were prepared in plaintiffs' office and were then delivered with the stocks attached to Continental Illinois National Bank & Trust Company for collection. Continental then forwarded them to the defendant, University National Bank, for collection.

On Wednesday, February 6, 1963, Continental received a number of drafts from the plaintiffs including the first two involved in this case. These were received by defendant, University National Bank, on the following day, February 7, 1963. On the same date of receipt, defendant immediately mailed out collection notices thereof to

defendant, Georgia Barlas. Kosta Barlas claimed that he received them for his mother.

On Thursday, February 7, 1963, Continental Bank received additional drafts from plaintiffs for collection, including the third involved in this case. That draft with stock attached was mailed that day to defendant, University National Bank, for collection. The defendant, University National Bank, received this draft on the following day and immediately mailed out a collection notice thereof to Georgia Barlas dated February 8, 1963. Kosta Barlas claims that he also received this one for his mother.

On Friday, February 8, 1963, Continental also received additional drafts from plaintiffs for collection including the fourth draft involved here. This draft with the stock attached was mailed to defendant, University National Bank, on the same day. While the University National Bank was open until 1:00 p. m. on Saturday, February 9, 1963 (as opposed to a normal closing time of 2:30 p. m.), Mrs. Annetta Purka, Vice President of the defendant, University National Bank, testified that the bank did not receive this draft until Monday, February 11, 1963, when it was processed. Kosta Barlas likewise claims that he also received this notice for his mother.

On Monday, February 11, 1963, defendant, University National Bank, had not heard from Georgia Barlas in response to the notices sent the previous Thursday and Friday—the first three drafts involved in this appeal. Mrs. Purka, Vice President of the University National Bank, testified that she tried to reach Mrs. Barlas by telephone but was unsuccessful.

Kosta Barlas came into defendant bank on Monday, February 11 and Mrs. Purka told him about the drafts and stocks for his mother; that notices were sent and that his mother could not be reached by telephone. He told Mrs. Purka that he had purchased the securities on her

59

account and that he was trying to secure financing to take care of the drafts. Kosta Barlas was unable to obtain financing to pay for the stocks, with the result that on Febuary 14, the four drafts in issue were returned by the University National Bank to the Continental Bank. Upon receipt of the stocks the plaintiffs began to sell them to mitigate its damages. Sale of the 10,300 shares of Perfect Photo Stock resulted in a loss of $15,-694.70 to the plaintiffs.

The first issue on this appeal is whether the University National Bank was acting as a payor or a collecting bank under section 4–105 of the Uniform Commercial Code. The defendant, University National Bank, contends that it was acting as a "collecting bank," and that it was error for the trial court to have found that the defendant was a "payor bank." Section 4–105, Uniform Commercial Code provides that:

"In this Article unless the context otherwise requires:

"(a) 'Depositary bank' means the first bank to which an item is transferred for collection even though it is also the payor bank;

"(b) 'Payor bank' means a bank by which an item is payable as drawn or accepted;

"(c) 'Intermediary bank' means any bank to which an item is transferred in course of collection except the depositary or payor bank;

"(d) 'Collecting bank' means any bank handling the item for collection except the payor bank;

"(e) 'Presenting bank' means any bank presenting an item except a payor bank;

"(f) 'Remitting bank' means any payor or intermediary bank remitting for an item."

The comments to this section of the Code make it quite clear that the function performed by the Uni-

60

versity National Bank was that of a "collecting bank." The term "payor bank" includes a drawee bank and also a bank at which an item is payable if the item constitutes an order on the bank to pay, for it is then "payable by" the bank. If the "at" item is not an order in the particular state, then the bank is not a payor, but will be a presenting or collecting bank.

Paragraph 3 under comments states: "Items are sometimes drawn or accepted 'payable through' a particular bank. Under this Section and Section 3–120 the 'payable through' bank (if it in fact handles the item) will be a collecting (and often a presenting) bank; it is not a 'payor bank.' "

Plaintiffs prepared the drafts and placed them with Continental Bank for collection which transmitted them to the defendant, University National Bank, for collection. Each of the drafts stated: "To University National Bank, 1354 E. 55th St., Chicago, Ill. a/c Georgia Barlas." Continental's letters of transmittal to defendant, University National Bank, expressly stated: "We enclose for collection and remittance in Chicago funds only when actually paid." Defendant, University National Bank, prepared and sent collection notices to Georgia Barlas or Kosta Barlas, her agent. And finally, the collection receipts issued for the drafts by Continental to the plaintiffs expressly stated, "Received . . . for collection." In the light of these facts it is clear that the University National Bank was performing the functions of a "collecting bank" under the Uniform Commercial Code.

The next issue on this appeal is whether the University National Bank failed to carry out its responsibility as a collecting bank. The responsibility of a "collecting bank" is defined as follows in section 4–202, Uniform Commercial Code:

## "RESPONSIBILITY FOR COLLECTION: WHEN ACTION SEASONABLE

"(1) A collecting bank must use ordinary care in

"(a) presenting an item or sending it for presentment; and

"(b) sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor or directly to the depositary bank under subsection (2) of Section 4–212 after learning that the item has not been paid or accepted, as the case may be; and

"(c) settling for an item when the bank receives final settlement; and

"(d) making or providing for any necessary protest; and

"(e) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

"(2) A collecting bank taking proper action before its midnight deadline following receipt of an item, notice or payment acts seasonably; taking proper action within a reasonably longer time may be seasonable but the bank has the burden of so establishing.

"(3) Subject to subsection (1) (a), a bank is not liable for the insolvency, neglect, misconduct, mistake or default of another bank or person or for loss or destruction of an item in transit or in the possession of others."

■ An attempt was made by the defendant, University National Bank, to prove that there was a trade custom and usage among Chicago banks for the handling of Chicago drafts, i. e., that five full business days are allowed to receive, process, notify drawee, try to collect,

notify forwarding bank and return the drafts uncollected or transmit the money if paid. Since we are of the opinion that any delay in handling the drafts in issue was ratified or confirmed by the plaintiffs, the existence or nonexistence of the alleged custom is of no consequence on this appeal.

Scott Wennerstrum was the registered representative of the plaintiffs who handled the affairs of Georgia Barlas and her son, Kosta. There is testimony from Mrs. Annetta Purka, Vice President of University National Bank that Mr. Wennerstrum made two calls to University National Bank on Monday, February 11, 1963, about the drafts. At that time Mrs. Purka testified that he told her to hold them, and that they would let her know what to do with the drafts. It was denied by the plaintiffs that they contacted the University National Bank on this date.

Again, on February 13, 1963 (or for the first time according to the plaintiffs), calls were made by Mr. Wennerstrum to the University National Bank who instructed Mrs. Purka to keep the drafts until he lets her know. James Golding, plaintiffs' Securities Cashier, also called and told Mrs. Purka that "we would check back with them later that day." William J. Lawlor, Jr., a general partner, also called the University National Bank and told Mrs. Purka "I will contact Continental and we will let you know." "Hold the drafts. Do not return them yet. He will let us know." In spite of knowledge that the four drafts in issue here were not paid, the plaintiffs went ahead and sent out a fifth draft for collection on this date.

As late as February 14, 1963, plaintiffs were still willing to accept payment, and were trying to contact either Kosta Barlas or his mother to obtain payment. Finally, on February 14, 1963, Continental took action to have the drafts returned.

In view of the above unequivocal evidence that both a registered representative and a general partner of the plaintiffs with knowledge of nonpayment of the drafts, instructed the University National Bank to hold and not return the drafts, we are of the opinion that any delay in handling the aforementioned items was the result of obeying the instructions of the plaintiffs. For these reasons the judgment is reversed and the cause remanded with directions to enter judgment for defendant and against plaintiffs.

Judgment reversed and cause remanded with directions.

LYONS, P. J. and BURKE, J., concur.