The SOUTHERN COTTON OIL CO., INC., Plaintiff-Appellant,

v.

MERCHANTS NATIONAL BANK, Defendant-Appellee.

No. 81–4077.

United States Court of Appeals, Fifth Circuit.

March 15, 1982.

Rehearing Denied April 14, 1982.

William C. Beanland, Vicksburg, Miss., for plaintiff-appellant.

J. Stanford Terry, C. E. Sorey, II, Vicksburg, Miss., for defendant-appellee.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

Southern Cotton Oil Co., Inc. (Southern) brought this suit on the basis of three "draft" instruments which the Merchants National Bank (Bank) held for extended periods of time before returning them to Southern.[1] The District Court, following a trial without a jury, found that the Bank exercised reasonable care and dismissed Southern's complaint. We affirm that judgment on the basis of (i) both parties' argument at trial that these "drafts" were not "documentary drafts" as that term is defined under U.C.C. § 5–103(1)(b),[2] (ii) the District Court's implied finding that the Bank was in this case a "collecting" or "presenting" bank under U.C.C. § 4–105(d), (e) and not a "payor" bank under U.C.C. § 4–105(b), and (iii) the District Court's implied finding that the Bank acted in a "seasonable" fashion under U.C.C. § 4–202.

■ At oral argument, all parties agreed that these instruments were not "documentary drafts" under U.C.C. §§ 4–501 and 4–503. Thus the primary issue on appeal is whether the Bank is a payor bank governed by U.C.C. § 4–302 or a collecting bank governed by § 4–202. If the Bank was a payor bank, it was required under the U.C.C. to take action on each of the drafts by its midnight deadline. If it was a collecting bank, it was required to act seasonably and it has the burden of proof to establish such seasonableness.

■ Southern concedes that the Bank was a "collecting bank", yet argues that it was also the payor bank because the buyer in the present controversy maintained its accounts there. A payor bank is defined under U.C.C. § 4–105(b) as a bank by which an item is payable as drawn or accepted. Notably, however, the Bank did not have authority from the buyer in this case to charge its account for payment of the draft

---

1. Southern sells cottonseed meal and hulls from its mill at Greenville, Mississippi. The mill manager, when informed of the name and location of a buyer, would load a freight car for that destination and prepare a sight draft drawn on the customer and his bank which was deposited in a local bank along with an invoice, an analysis tag, and a bill of lading. The local bank would give Southern credit and send the draft with its attachments to the bank whose name appeared on the draft—in this case, Merchants National. In the present con-troversy, the buyer under all three drafts was notified that the drafts had arrived, and they were held fifty-two days before they were returned unpaid. The buyer, in the meantime, went bankrupt. Southern, as a creditor, thus lost $20,203.30, and sued the Bank for dilatory handling of the drafts.

2. The Uniform Commercial Code (U.C.C.) has been adopted in Mississippi, Miss.Code § 75–1–101 et seq. (1972).

without prior approval. In addition, the Bank promptly notified the buyer of each draft's arrival and continued periodic notification thereafter. The same situation was present in *Wilhelm Foods, Inc. v. National Bank of North America v. Centaur Packing Co., Inc.*, 382 F.Supp. 605, 388 F.Supp. 1376 (S.D.N.Y.1974). There, the parties agreed that for National Bank of North America to be a payor bank, it must be the drawee under the drafts since the bank had not "accepted" the draft by the required signature. Where the names of both the customer and the bank were listed in the space for drawee, as in the present case, it was unclear whether the bank was the drawee. 382 F.Supp. at 609. Surrounding circumstances must then be considered in resolving this ambiguity. Where the customer does not authorize the defendant bank to make payments out of its account on the plaintiff's order, there was no account out of which the plaintiff could draw funds. In the present controversy, it is clear that the Bank acted as a collecting bank, presenting the drafts to the buyer for payment and forwarding the payment to the seller's local bank only after receiving funds or authorization from the buyer.

The U.C.C. requires a "collecting bank" to exercise ordinary care in the presentment and notice of dishonor of an item other than a documentary draft, and the bank has the burden of establishing seasonable action beyond the midnight deadline. U.C.C. § 4–202. "Reasonable" or "seasonable" time for taking any action depends upon the nature, purpose and circumstances of such action. U.C.C. § 1–204(2). A course of dealing may establish the seasonableness of an action. U.C.C. § 1–205; § 3–503. A course of dealing had been established between the Bank and Southern prior to the present controversy. In seven prior transactions, delays from 9 to 45 days had been experienced. In three similar transactions involving drafts drawn by Southern on another customer, the payments were each delayed by 48 days. This history of slow payment was acceptable until, of course, a buyer became bankrupt in the interim. In light of this established

course of dealing, we are in agreement with the District Court's implied finding that the Bank acted seasonably in delaying notice of dishonor for 52 days.

Because of the above conclusions, we need not reach the issues of (i) whether Southern has the burden to prove that it was damaged, (ii) whether it met the burden on that issue, or (iii) whether Southern is barred in this action by the doctrine of election of remedies.

AFFIRMED.