ALIMENTA (U.S.A.), INC., Plaintiff,

v.

Larry R. STAUFFER, West Texas Cottonseed Products, Inc., Agri Products Export, Inc., Wy-Tex Livestock, Inc. Lisa Voyles, Jim Moore a/k/a Jimmy J. Moore and Jimmy Jack Moore, Jerry Hayes, Brazos Valley, Inc., Defendants.

WY–TEX LIVESTOCK, INC., Plaintiff,

v.

The FIRST NATIONAL BANK OF ATLANTA, Defendant,

v.

ALIMENTA (U.S.A.), INC., Third-Party Defendant.

SOFICO, INC., Plaintiff,

v.

ALIMENTA (U.S.A.), INC., Defendant and Third-Party Plaintiff,

v.

Larry R. STAUFFER, Third-Party Defendant.

Civ. A. Nos. C81–251A, C81–1385A and C82–855.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 5, 1983.

John G. Parker, W. Lyman Dillon and Jane Fugate Thorpe of Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Alimenta.

Thomas Thorne-Thomsen of Alston, Miller & Gaines, Atlanta, Ga., John T. Huffaker of Gibson, Ochsner & Adkins, Amarillo, Tex., for Larry Stauffer.

## ORDER

ROBERT H. HALL, District Judge.

The three cases consolidated in this diversity action concern cottonseed meal and oil commodity trades in 1979 and 1980. The second case, *Wy-Tex Livestock, Inc. v. The First National Bank of Atlanta v. Alimenta (U.S.A.), Inc.,* (C81–1385A), is a suit by Wy-Tex Livestock, Inc. ("Wy-Tex") to recover the face value of certain drafts which were sent to, but returned unpaid by, The First National Bank of Atlanta ("FNBA"). Presently before the court is a Motion for Summary Judgment filed by FNBA.

FACTS

Because of the consolidation of case C81–1385A with other related litigation, the facts are complex and lengthy. Therefore, the court will only describe the facts relevant to the motion before it.

In December, 1980, Wy-Tex entered into three contracts with Alimenta (U.S.A.), Inc. ("Alimenta"), a customer of FNBA, in which Wy-Tex agreed to sell cottonseed meal to Alimenta. For reasons irrelevant to this motion, Alimenta refused delivery on these contracts, whereupon Wy-Tex attempted to "cover" these contracts by selling the cottonseed meal to others. Unable to match the contract price, Wy-Tex drew 27 drafts and sent them, through Panhandle Bank, to FNBA. Each draft represented the difference between the contract price and the cover price for a particular cover sale. Each draft was drawn and presented for payment after the corresponding cover sale was consummated.

The lower portion of each draft contained the following:

TO: The First National Bank of Atlanta
International Department
P.O. Box 4155
Atlanta, Georgia 30302

Account Number 07–505–106

ALIMENTA (USA), INC.

s/ (Wy–Tex employee)

---

Transmittal forms accompanied the drafts which stated that FNBA should not "hold unpaid documents without authority" and that "if not honored promptly, please return. No protest unless instructed." At least 15 of the 27 drafts contained the legend, "pay within 72 hours or return."

Upon receipt of the drafts, FNBA notified Alimenta that it was holding the drafts for collection. When FNBA was unable to obtain Alimenta's acceptance of the drafts, it returned them to Panhandle Bank, unpaid. The period which FNBA held the drafts ranged from 11 to 57 days.

In its suit against FNBA, Wy-Tex alleges that FNBA's delay in returning the drafts beyond the time period specified in the drafts makes FNBA liable for the face amount of the drafts. FNBA now moves for summary judgment on the ground that there is no genuine dispute that it is not liable to Wy-Tex.

DISCUSSION

Wy-Tex seeks to hold FNBA accountable for the full amount of the 27 drafts under O.C.G.A. §§ 11–4–302 and 11–3–419. Those sections provide in pertinent part as follows:

11–4–302. Payor bank's responsibility for late return of item.

In the absence of a valid defense such as breach of presentment warranty ... if an item is presented on and received by a payor bank the bank is accountable for the amount of:

(a) A demand item other than a documentary draft whether properly payable or not if the bank ... retains the item beyond midnight of the banking day of receipt without settling for it or ... does not pay or return the item or send notice of dishonor until after its midnight deadline.... [1]

11–3–419. Conversion of instrument; innocent representative.

(1) An instrument is converted when:

(a) A drawee to whom it is delivered for acceptance refuses to return it on demand, or

(b) Any person to whom it is delivered for payment refuses on demand either to pay or return it

\* \* \* \* \* \*

(2) In an action against a drawee under subsection (1) ... the measure of the drawee's liability is the face amount of the instrument....

\* \* \* \* \* \*

Wy-Tex contends that it drew the 27 drafts at issue as agent for Alimenta and that the drafts were drawn on FNBA as drawee/payor bank, making FNBA subject to these sections.

FNBA moves for summary judgment on the ground that it was not a payor bank or drawee with respect to the drafts and thus is not subject to the above provisions. FNBA contends that it acted as a "collecting" [2] or "presenting" [3] bank with regard to the drafts and that, under O.C.G.A. § 11–4–103(5), it is not liable to Wy-Tex for any amount. The obvious initial question

---

1. O.C.G.A. § 11–4–104(1)(h) defines "midnight deadline" as follows:

Midnight deadline with respect to a bank is midnight of its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later....

2. O.C.G.A. § 11–4–105(d) provides: " 'Collecting bank' means any bank handling the item for collection except the payor bank."

3. O.C.G.A. § 11–4–105(e) provides: " 'Presenting bank' means any bank presenting an item except a payor bank."

for the court is whether there is a genuine dispute over FNBA's status as a drawee/payor[4] bank with respect to the drafts at issue.

Section 11-4-105(b) defines a payor bank as "a bank by which an item is payable as drawn or accepted." Since the drafts were not accepted[5] by either FNBA or Alimenta, FNBA would be a payor bank only if it was a bank by which the drafts were "payable as drawn." Thus, under the facts of this case, for FNBA to be a payor bank it must have been the drawee of the drafts.

Wy-Tex argues that it is clear from the face of the drafts that FNBA was the drawee because the order to pay was directed to it. FNBA, on the other hand, contends that it is clear from the face of the drafts that the drafts were directed to Alimenta and not to it, or alternatively, that an ambiguity exists which is clarified by extrinsic evidence that establishes that Alimenta was the drawee and FNBA was the collecting bank.[6]

The drafts at issue are unlike those which typically come before the courts. The names of the customer and the bank are not both listed in the space for the drawee, *see Southern Cotton Oil Company, Inc. v. Merchants National Bank,* 670 F.2d 548 (5th Cir.1982), nor are both the name and signature to the right of the space for the drawee that of the drawer. *See Union Bank of Benton v. First National Bank,* 621 F.2d 790 (5th Cir.1980). Instead, in this case, Alimenta's name appears in the right corner where normally the name of the drawer would appear. It seems clear that Alimenta was not the drawer, so the pur-

pose of the reference to Alimenta in that space is not clear. It is possible that Alimenta's name was meant to be a continuation of the reference to the account beneath FNBA's name and address.[7] If this is true, there would be an ambiguity as to the intended drawee. *Cf. Wilhelm Foods, Inc. v. National Bank of North America,* 382 F.Supp. 605 (S.D.N.Y.1974) (Draft "To: National Bank of North America ... Account of: Da Fran Meat Company" found ambiguous as to drawee). Thus, the court cannot conclude from the face of the drafts whether Alimenta or FNBA was the intended drawee.

With such an ambiguity, surrounding facts and circumstances must be considered. *Id.; Southern Cotton Oil Company, Inc. v. Merchants National Bank, supra.* After considering the extrinsic evidence, the court finds that there is no genuine dispute that FNBA was the collecting bank, not the drawee of the drafts.

First, the transmittal notices from Panhandle Bank, the forwarding bank, in each instance included the legend "We enclose the described documents for collection" and described Alimenta as "Payer" of the draft. These instructions indicate that the drafts were not presented to FNBA for payment, but for collection from Alimenta.

Second, it is clear that FNBA lacked the authority to pay the drafts out of Alimenta's account without Alimenta's explicit acceptance. The testimony of the Chief Financial Officer of Alimenta and an FNBA Vice President indicate that FNBA was given no authority from Alimenta to pay drafts drawn against Alimenta without Ali-

---

**4.** O.C.G.A. § 11-4-105, Comment 2, states that: "The term payor bank includes a drawee bank...."

**5.** O.C.G.A. § 11-3-410(1) provides: "Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone...."

**6.** "Collecting" bank and "presenting" bank are used interchangeably for the purposes of this motion.

**7.** Wy-Tex insists that the bracket between the two sets of information clearly shows that the information to the left indicates the intended drawee. The court is not convinced. The bracket was merely a part of the draft form and cannot be viewed as supplying any indication of the drawee's identity, especially where the drawer may not have had enough room to complete the drawee information.

menta's acceptance of the drafts. Goodloe Deposition, pp. 176–178; Stephens Affidavit, ¶ 3. Since Alimenta never authorized FNBA to make payments out of its account on the drafts, there was no account out of which Wy-Tex could order FNBA to make payment.

Finally, FNBA *acted* like a collecting bank, presenting the drafts to Alimenta for acceptance and withholding payment until Alimenta authorized payment. Under all the circumstances, the court finds that FNBA was a collecting bank with respect to the drafts at issue. *Cf. The Southern Cotton Oil Co., Inc. v. Merchants National Bank, supra* (In resolving ambiguity on face of drafts, court concluded that bank's lack of authority to make independent payments out of customer's account indicated bank was acting as a collecting bank.); *Wilhelm Foods, Inc. v. National Bank of North America v. Centaur Packing Co., Inc., supra* (Transmittal letters and bank's lack of authority to make payments without customer's approval convinced court that bank was a collecting bank in face of ambiguous drafts).

With the determination that FNBA was acting as a collecting bank rather than a payor or drawee, the court must now assess FNBA's motion for summary judgment in light of O.C.G.A. § 11–4–103(5). As a collecting bank, FNBA was required to exercise ordinary care under O.C.G.A. § 11–4–202 [8] and thus has the right to invoke the damage limitation of O.C.G.A. § 11–4–103(5). That section provides that: "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount

which could not have been realized by the use of ordinary care...."

This limitation on liability is explained by the Eighth Circuit in *Marcoux v. Van Wyk,* 572 F.2d 651 (8th Cir.1978): [9]

> When a bank handles an item carelessly, it is liable for the damages caused by its negligence in the amount of the item reduced by the amount that could not have been collected in any event.... In other words, the plaintiffs' measure of damages is the amount they could have collected had the Bank returned the unpaid drafts seasonably; conversely, *if the amounts due were uncollectible in any event, the Bank's negligence caused no damage.*

*Id.* at 653 (Emphasis added). The court went on to say that:

> Plaintiffs must show they would have had at least a *reasonable chance* to collect .... It is not enough to show that by a fortuitous combination of unlikely events there was a dim hope of collection.

*Id.* at 655 (Emphasis in original). Finally, in overturning the trial court's refusal to find that the drawer-seller was not entitled to recover from the collecting bank, the court stated:

> The standard under the Code is not a particularly liberal one in terms of plaintiff recovery; it is set up to protect banks from liability for customers' debts unless there is a clear causal connection between the bank's actions and the plaintiff's loss.

*Id.* at 656.

Applying this reasoning, the court finds that there is no genuine dispute that Wy-Tex is not entitled to any recovery from FNBA, even if the jury were to find that

---

**8.** O.C.G.A. § 11–4–202 states in part:

(1) A collecting bank must use ordinary care in:

(a) Presenting an item or sending it for presentment; and

(b) Sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor after learning that the item has not been paid or accepted, as the case may be;

\* \* \* \* \* \*

(2) A collecting bank taking proper action before its midnight deadline following receipt of an item ... acts seasonably; taking proper action within a reasonable time may be seasonable but the bank has the burden of so establishing.

\* \* \* \* \* \*

**9.** The Georgia Code is identical to the Code which the court is applying with respect to the measure of damages for a collecting bank's negligence.

FNBA failed to exercise ordinary care.[10] Wy-Tex would not have been in any better position with regard to the drafts had FNBA returned them more quickly. The Vice President of Wy-Tex stated at his deposition that the fact that the drafts were unpaid had no effect on Wy-Tex's actions regarding the cover sales. Hayes Deposition, pp. 50–51. Thus, Wy-Tex would have made the cover sales in any event. Moreover, Alimenta would not have paid the drafts even if Wy-Tex had received the unpaid drafts earlier and acted on them.[11] Also, Alimenta did not become less capable of paying the drafts during the time the drafts were held by FNBA. Because Wy-Tex was not damaged by FNBA's actions, it cannot now recover from FNBA. *Cf. Wilhelm Foods, Inc. v. National Bank of North America, supra* (Seller denied recovery because it would not have realized anything on its drafts even if the Bank had promptly returned each draft).

FNBA's Motion for Summary Judgment is accordingly GRANTED.

---

10. The court does not intend to make any suggestion that it considers FNBA's delay unreasonable.

11. The fact that Alimenta initiated the conspiracy suit against Wy-Tex suffices to show its adamant refusal to pay the drafts.