**W.H. HORNEY, Plaintiff-Appellant,**

v.

**COVINGTON COUNTY BANK,
Defendant-Appellee.**

**Dick POLING and Bob Poling,
Plaintiffs-Appellants,**

v.

**COVINGTON COUNTY BANK OF
COLLINS, MISSISSIPPI,
Defendant-Appellee.**

Nos. 82–4255, 82–4307.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1983.

Rehearing and Rehearing En Banc
Denied Feb. 27, 1984.

Thomas W. Tyner, Hattiesburg, Miss., for plaintiff-appellant in No. 82–4255.

Frank D. Montague, Jr., F. Douglas Montague, III, Hattiesburg, Miss., for defendant-appellee in both cases.

James N. Compton, Carter O. Bise, Biloxi, Miss., for plaintiffs-appellants in No. 82–4307.

David Shoemake, Collins, Miss., for defendant-appellee in No. 82–4307.

Before REAVLEY and JOHNSON, Circuit Judges, and WYZANSKI*, District Judge.

REAVLEY, Circuit Judge:

This is a dispute over the application of the Mississippi Uniform Commercial Code. We must decide whether an instrument presented to the appellee Covington County Bank (the Bank) obligated the Bank to pay or dishonor within the midnight deadline required by Miss.Code Ann. § 75–4–302. We disagree with the district court's conclusion that the Bank was only a collector of these drafts; and we reverse.

## BACKGROUND

These consolidated appeals arise out of the cattle business of one A.A. Cervantes, doing business under the name Cattle Company. Horney and Poling, plaintiffs-appellants, shipped cattle to Cervantes. Cervantes would then send the parties payment. The form of the instrument used for payment was as follows:

* District Judge of the District of Massachusetts, sitting by designation.

```
                CUSTOMERS DRAFT
                 (NON CASH ITEM)
  No. _____    COLLINS, MISS. _____197__
  UPON ACCEPTANCE
  PAY TO THE
  ORDER OF _____$_____
  _____ DOLLARS
  TO: _____
  _____        _____
```
(left margin, rotated: COVINGTON COUNTY BANK / COLLINS, MISSISSIPPI)

This instrument was identical to the typical check used by the Bank, except for the addition of the words "UPON ACCEPTANCE" and "NON CASH ITEM." The name of appellants would appear after "PAY TO THE ORDER OF," and the instrument would be signed by the agent for Cervantes (viz. Cattle Company). In the space behind "To" would be inserted:

Cattle Company

610–627–7

Covington County Bank

Collins, Miss.

Appellants treated these instruments as checks. They would deposit them with their local bank, who would in turn present them to the Bank for payment. Upon receipt of the instrument, however, the Bank consistently held the instruments for several days (while it obtained oral authorization to pay from Cattle Company). This procedure caused no ostensible problems until Cattle Company became unable to cover its obligations.

The district court directed a verdict in the Horney case and denied the Polings' motion for judgment n.o.v. when the jury returned a verdict for the Bank.[1] Horney and the Polings appeal arguing that the district court should have granted their directed verdict/judgment n.o.v. motions.

## THE ISSUES

Appellants argue that the Bank is liable under 75–4–302, which states:

> In the absence of a valid defense . . . if an item is presented on and received by a

payor bank the bank is accountable for the amount of

> (a) a demand item . . . whether properly payable or not if the bank . . . retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline.

Appellants assert that: (1) the instrument is a demand item, (2) the Bank is a payor Bank, and (3) the Bank held the item long past the midnight deadline, thus making the Bank liable for the face amount of the items. The Bank argues that the instrument is not a demand item and that it is not a payor bank within the meaning of the statute.

## 1. Demand Item

An "item" is defined as "any instrument for the payment of money even though it is not negotiable." 75–4–104(g). Although a demand item is not specifically defined, under Article 3 something is on demand if it is "payable at sight or on presentation . . . [or] no time for payment is stated." *Id.* at 75–3–108. Thus, something is a demand item if it is an "instrument for the payment of money" which is payable when "no time for payment is stated." The instrument here clearly meets this definition: no time for payment is specified and it is an instrument for the payment of money.

The Bank argues that because the words "upon acceptance" indicate that there is no unconditional order to pay, this instrument is not a check. This argument is irrelevant to liability under 75–4–302. A check is defined in 75–3–104 as a draft drawn on a bank and payable on demand. One of the prerequisites for a check is negotiability, which requires an unconditional promise to pay. Yet the very definition of an item negates any requirement of negotiability. The official comment states that "the word item . . . includes non-negotiable as well as

1. The trial court instructed the jury to find for the Polings' if the instruments were what we

here hold them to be.

negotiable paper calling for money." We are confident that under Article 4 it is clearly "non-negotiable . . . paper calling for money." Therefore, the instrument here is a demand item.

We hold that the words "upon acceptance" do not affect the order to pay. If "acceptance" were used in its technical sense under 75–3–410, *i.e.* "the drawee's signed engagement to honor the draft," it is nonsensical since it would mean that the plaintiffs would be paid if the Bank agreed to guarantee payment, something no one would expect the Bank to do. If it meant the "acceptance" by Bank's customer, it is superfluous since by signing, Cervantes through his agent accepted the instrument.

We also note that the Bank created this instrument. It could easily have made its status clear simply by using language such as "payable through" or "payable at" with the effect discussed below. It may well be that this item was negotiable and a check. However, all we need decide is that this instrument is a demand item.

### 2. Payor Bank

A payor bank is "a bank by which an item is payable as drawn or accepted." 75–4–105(b). The comment further states a payor bank "includes a drawee bank and also a bank at which an item is payable if the item constitutes an order on the bank to pay."

The Bank asserts that it cannot be a payor bank because it is not a drawee. The Bank asserts that the only party named as the drawee was Cattle Company.

In a typical check, a bank's printed name on the instrument suffices to make it the drawee. In the customer draft form used here, however, the name of the drawee is usually inserted after the word "to" on the instrument. *See Engine Parts, Inc. v. Citizens Bank of Clovis,* 92 N.M. 37, 582 P.2d 809, 812 (1978) (bank's name inserted prior to the order to pay instead of following "to" did not prevent it from being the drawee); *Union Bank of Benton v. First National Bank in Mt. Pleasant,* 621 F.2d 790, 793 (5th Cir.1980) (insertion of one bank's name af-

ter "to" on the draft made it the drawee, despite the fact that other bank's name was printed on the draft). Thus, the issue posed for our consideration is whether the words,

Cattle Co.

610–617–7

Covington County Bank

Collins, Miss.,

designated the Cattle Co. or the Bank as drawee.

Several cases have held that language similar to the language here designates only the customer and not the bank as the drawee. For example, in *San Antonio Livestock Market Institute v. First National Bank of Hallettsville,* 431 S.W.2d 408 (Tex. Civ.App.—Corpus Christi 1968, no writ), the court held that drafts drawn:

To Julius Caesar Cattle Account

First National Bank

Hallettsville, Texas

were drawn on the customer, not the bank. Other cases decided before and after the passage of the U.C.C. have also held that similar language did not make a bank the drawee. *E.g. Branch Banking and Trust Co. v. Bank of Washington, N.C.,* 255 N.C. 205, 120 S.E.2d 830 (1961); *Phelan v. University National Bank,* 85 Ill.App.2d 56, 229 N.E.2d 374 (1967); *Wilhelm Foods, Inc. v. National Bank of North America,* 382 F.Supp. 605 (S.D.N.Y.1974). However, in each of these cases, the draft had been drawn by the payee, and this fact figured significantly in the court's decision. For example, in *Branch Banking,* the court noted that: "H & N Hog Market [the payee] had no account with [the] defendant [bank]. Defendant was not . . . obligated to [H & N]. Washington Hog Market, [the drawer/drawee], which had an account with defendant, had not authorized defendant to charge . . . any drafts to its account." 120 S.E.2d at 837. Therefore, the court treated the bank as a collecting bank.

In cases in which the bank's customer has drawn the draft, however, the courts have treated the bank as the drawee and the draft by its depositor as an order to pay. For example, in *Farmers Co-op. Livestock*

*Market v. Second National Bank,* 427 S.W.2d 247 (Ky.1968) the court held that the bank was the drawee despite the notation "To [be] charged to Acct. of Robert Martin." The court stated: "[t]his draft was drawn on appellee bank and was payable by it. The fact that it was chargeable to Martin's [the maker] account is not significant. All checks are chargeable to someone's account. Appellee was the payor bank." *Id.* at 249. Similarly, in *Engine Parts* the court held that the insertion of the bank's name by its customer before "pay to the order of" and the insertion of the drawer's name after "to" indicated that the bank was the drawee. The court explained:

> Only the designation of K & W Enterprises [the maker] is ambiguous. This latter ambiguity is irrelevant since a draft may designate more than one drawee . . . whether or not K & W Enterprises is a drawee does not change the fact that the Clovis bank is a drawee.

582 P.2d at 813.

A similar rationale was used in a case in which the bank's customer did not draw the draft. *New Ulm State Bank v. Brown,* 558 S.W.2d 20 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). The court stated that a draft containing:

> To: R & R Farms, Inc.
> New Ulm State Bank
> New Ulm, Texas

designated both R & R Farms, Inc. and New Ulm State Bank as drawees and the order to pay is addressed to them jointly. *Id.* at 25. *See also Pecos County State Bank v. El Paso Livestock Auction Co.,* 586 S.W.2d 183 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.) (draft drawn by banks customer's agent stating, "Value Received and Charged to Account of Mesa Packing Company[,] Pecos County State Bank" designated bank as drawee).

■ Applying these cases to the instrument before us, we have no hesitation in holding that the Bank is the drawee. It is clear that Cervantes' authorized agent prepared and signed the drafts. Thus, cases such as *Branch Banking* and *Phelan* do not

apply. Instead, the rationale of *Engine Parts* and *New Ulm* should apply. At best the language indicates that the bank is a co-drawee. *See* 75–3–504(3)(a). A very reasonable construction of the language would be that the words "Cattle Co." with the account number serve only to identify the account, and that the Bank is the sole drawee. However, the Bank is clearly *a* drawee, and it is therefore a payor bank within the meaning of 75–4–105(b).

■ One further point we address is the Bank's assertion that Mississippi's adoption of Alternative B to U.C.C. § 3–121 impacts on the question of the Bank's liability. This section states "a note or acceptance which states that it is *payable at* a bank is not of itself an order . . . to the bank to pay it." 75–3–121 (emphasis added). Quite frankly, we are at a loss to understand the Bank's position here. This section is one of the U.C.C.'s "magic word" sections, which only applies *if* the instrument contains the words "payable at." The comment to the section clearly indicates that differing practices regarding instruments payable at a bank motivated the drafters to provide alternative sections. The structure of the U.C.C. itself indicates that this section deals only with instruments containing the words "payable at." The section preceding 3–121, 3–120 deals with "Instruments 'Payable Through' a bank," and its structure is parallel to 3–121. As the court in *Engine Parts* stated:

> To make a draft payable "through" or "at" a bank, and thus designate the bank as a mere conduit for payment and not as a "payor" bank directly ordered to pay, the *drawer* of the draft must expressly write the word "through," "pay through," "at," "payable at," or similar words . . . *on the instrument itself.*

582 P.2d at 813. Since no such words were written on the instrument, 75–3–121 does not apply.

■ The Bank's last-ditch effort to avoid liability is to argue that the parties here agreed to either waive the midnight deadline or actually treated the instrument as

one sent for collection. The Bank relies on 75–4–103, which states that "[t]he effect of the provisions of this chapter may be varied by agreement ...." Assuming that 75–4–103 can apply to 75–4–302, the parties here have not waived compliance with the latter. Both Horney and the Polings testified that they treated the instrument as a check. Horney's bank collection letter stated "remit at sight," consistent with the view that it was a demand item. While Polings' bank collection letter did not use similar language, it is not inconsistent with the view that it was a demand item. The Bank finds great solace in the delays between payment and presentment. We think, however, these delays are irrelevant, because the plaintiffs were given no reason to question the validity of the instruments or receipt of payment accordingly.

REVERSED and REMANDED for entry of judgment consistent with this opinion.