**GREAT WESTERN BANK, a Federal Savings Bank, Plaintiff,**

v.

**STEVE JAMES FORD, INC., et al., Defendants.**

No. CV 494–090.

United States District Court, S.D. Georgia, Savannah Division.

Jan. 16, 1996.

Dana F. Braun, Stanley E. Harris, Jr., Savannah, GA, Wendi L. Aikin, Winter Park, FL, for Plaintiff.

Steve James Ford and Steve James: Terry L. Readdick, Brunswick, GA, Joseph R. Odachowski, St. Simons Island, GA, for Defendants.

Derrick Musselwhite, Longwood, FL, for Defendant Musselwhite.

Robert H. Baer, Brunswick, GA, Christian J. Steinmetz, III, Savannah, GA, for Defendant James Halloway.

## ORDER

NANGLE, District Judge.

Before the Court is the Motion for Summary Judgment filed by counter-defendant Great Western Bank. Fed.R.Civ.P. 56. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

This case arose out of an alleged check-kiting scheme that resulted in losses to both Great Western Bank ("Great Western Bank" or "Great Western") and Southeastern Bank ("Southeastern Bank" or "Southeastern"). In 1992, Derrick Musselwhite opened a checking account with Great Western which he used in his automobile broker business. From December, 1992, through April, 1993, Mr. Musselwhite conducted business with Steve James Ford, Inc. ("the dealership" or "Steve James Ford") and its officers. From May, 1993, through December, 1993, Mr. Musselwhite and James Holloway engaged in a joint venture to manage the dealership. The dealership maintained general and pay-roll checking accounts and new and used car floor plan financing with Southeastern Bank. From May to December, 1993, the dealership also maintained a "Steve James Ford, Special" account at Southeastern.

Great Western maintains that, in 1993, Mr. Musselwhite and Mr. Holloway executed a check-kiting scheme. They are alleged to have deposited automobile sight drafts at the dealership's account at Southeastern. Southeastern would give them immediate credit for the deposits. After these funds were credited, Messrs. Musselwhite and Holloway are alleged to have written checks on the dealership account to Mr. Musselwhite who would deposit the checks in his account at Great Western. Great Western alleges that those funds were used to cover the funds deposited at Southeastern and money was funneled back and forth between the two banks. The check-kiting scheme was discovered in December, 1993, and resulted in losses to both Great Western and Southeastern.

Great Western brought suit against Steve James Ford, Inc., Derrick Musselwhite and

James Holloway alleging, among other claims, both federal and State RICO violations. Great Western later amended its complaint and added Steve Garry James and Southeastern Bank as defendants. The claims against Southeastern were dismissed by order of this Court. Presently before the Court is Great Western's motion for summary judgment on Southeastern Bank's counterclaim which arises out of the same series of transactions.

On December 6, 1993, Steve James Ford, Inc., presented seven documentary drafts to Southeastern Bank, its depository bank. These seven drafts were signed by an authorized agent of Derrick Musselwhite in Mr. Musselwhite's name and were being used to purchase the automobiles described on the drafts from Steve James Ford. The drafts contained the language "Pay or Return Within 7 Days". The total amount of the drafts was $116,013.00. A copy of one of the drafts is attached hereto as Exhibit 1.

Upon receipt of the drafts, Southeastern Bank issued immediate credit to Steve James Ford, Inc., pursuant to the dealership's $500,000.00 credit line on drafts. On December 9, 1995, Southeastern forwarded the drafts along with a transmittal notice by mail to Great Western Bank in Orlando, Florida. The drafts were received by Great Western sometime between December 13, 1993, and December 15, 1993. On December 21, 1993, Mr. Musselwhite instructed Great Western Bank to return the drafts unpaid to Southeastern Bank. Great Western mailed the drafts to Southeastern via certified mail on December 21, 1993. They were received by Southeastern on December 29, 1993. After the kiting scheme collapsed, Steve James Ford had an overdraft of $261,638.00 in its account at Southeastern. Southeastern Bank obtained a promissory note for that amount from Steve James Ford.

Southeastern Bank brings this counterclaim against Great Western Bank alleging that it is liable for the face amount of the drafts because it did not return the drafts within the seven days provided for on the drafts. Great Western filed a motion for summary judgment on three different grounds: (1) Great Western Bank was a collecting bank, rather than a payor bank, and thus is not liable to Southeastern Bank on these drafts; (2) the promissory note was a full or partial satisfaction of Southeastern's claim against Great Western and (3) that, even if the drafts were received on December 13, 1995, return of the drafts on December 21, 1995, was within seven days because Sunday, a nonbanking day, is not counted in the computation of time.

## II. DISCUSSION

### A. Summary Judgment Standard

 Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note, *cited in Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985).

 The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Such a showing shifts to the nonmovant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986); *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). "Factual disputes that are irrelevant or unnecessary will not be counted", *United States v. Gilbert,* 920 F.2d 878, 883 (11th Cir.1991) (citation omitted), and a mere scintilla of evidence supporting the nonmovant's position will not fulfill this burden.

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

### B. Payor Bank or Collecting Bank

A payor bank is "a bank that is the drawee of a draft" and is strictly liable for failure to timely return documentary drafts. Fla.Stat.Ann. § 674.105(3); Fla.Stat.Ann. § 674.302(1)(b) [1]. A collecting bank "means a bank handling an item for collection except the payor bank". Fla.Stat.Ann. § 674.105(5). A collecting bank is required to seasonably notify its customer upon learning that a documentary draft has not been paid. Fla.Stat. Ann. § 674.501. Great Western argues that, even if the drafts in this case were not returned within seven days, it cannot be liable for them because it acted merely as a collecting bank. Southeastern, on the other hand, argues that Great Western was a payor bank, and thus strictly liable for the face amount of the drafts because it did not return them within seven days.

Based upon the drafts in question, the Court is unable to conclude that Great Western was the drawee of the drafts as is required for it to be a payor bank. The drafts are ambiguous as to whether Great Western was a drawee or a collecting bank. Mr. Musselwhite's name and business are listed on the left-hand side of the draft and Great Western is listed on the right-hand side of the draft. A drawee designation does not appear on any of the seven drafts. Moreover, there is no specific account number listed on the draft. *See Whitehall Packing Co., Inc. v. First National City Bank*, 55 A.D.2d 675, 390 N.Y.S.2d 189, 191 (1976) (finding that leaving blank the portion of the draft which directed the payor to charge a certain account supported a holding that bank was collecting bank).

In *Alimenta (U.S.A.), Inc. v. Stauffer*, 568 F.Supp. 674, 677 (N.D.Ga.1983), the Court held that an ambiguity existed when the bank's name was on the left side of the draft

and the customer's name on the right side of the draft because it was unclear whether the customer's name was a continuation of the account number listed under the bank's name. Likewise, in this case, it is difficult to tell from the drafts whether Great Western's name on the right side of the draft was meant to be a continuation of the drawee designation or merely the address of the collecting bank. Moreover, even if both Mr. Musselwhite's business and Great Western Bank had been designated as drawees, it would still be ambiguous as to whether the Great Western bank was a co-drawee. *See Southern Cotton Oil Co., Inc. v. Merchants National Bank*, 670 F.2d 548, 550 (5th Cir. 1982) ("Where the names of both the customer and the bank were listed in the space for drawee, as in the present case, it was unclear whether the bank was the drawee."). Accordingly, the drafts are ambiguous as to whether Great Western Bank was a drawee of the drafts.

Before the enactment of the 1990 Revision to the Uniform Commercial Code, a court would look to the surrounding facts and circumstances to determine a bank's status if the drafts were ambiguous. *Alimenta*, 568 F.Supp. at 677. In the present case, it is clear from looking at the surrounding circumstances that Great Western was a collecting bank. The Advices sent along with the drafts by Southeastern labels the drafts as an "Outgoing Collection" and states: "We mailed a collection item to the addressee." Great Western is listed as the addressee. *See id.* (holding that bank was collecting bank supported by fact that transmittal notices stated: "We enclose the described documents for collection.").

Finally, and most importantly, Great Western Bank was not authorized to pay the drafts from Mr. Musselwhite's account without his prior approval. In *Southern Cotton Oil Co., Inc. v. Merchants National Bank, supra*, the Court held that where a bank was

---

1. "The liability of a bank for action or nonaction with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located. In the case of action or nonaction by or at a branch or separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located." O.C.G.A. § 11-4-102(2). The branch of Great Western Bank that is charged with untimely return of the seven drafts is in Orlando, Florida. Accordingly, Florida law applies to the counterclaim.

not authorized by the buyer to charge its account for payment of the draft without prior approval, the bank was a collecting bank. *Id.* at 550. In the present case, Mr. Musselwhite testified that Great Western did not pay any documentary drafts until he was contacted, reviewed the drafts and provided funds for payment. Affidavit of Derrick Musselwhite at ¶ 5. Sometimes the funds to pay the drafts were part of the existing funds in his Great Western account, but usually Mr. Musselwhite deposited new funds and then purchased a cashier's check from Great Western to send to Southeastern. *Id.* at ¶ 7. The deposition excerpts of Great Western's employees supplied by Southeastern support this assertion. *See* Deposition of Linda Doll at 20–23, 32; Deposition of Lisa Rathel at 36–40. In this case, as in *Southern Cotton Oil Co, Inc.*, "it is clear that the [Great Western] Bank acted as a collecting bank, presenting the drafts to the buyer for payment and forwarding the payment to the seller's local bank only after receiving funds or authorization from the buyer." 670 F.2d at 550.

Southeastern Bank relies on the reasoning of *Horney v. Covington County Bank*, 716 F.2d 335 (5th Cir.1983), to argue that Great Western Bank is not a collecting bank. In *Horney*, the Fifth Circuit, relying largely on the fact that the bank's customer's authorized agent prepared and signed the drafts, held the bank to be a payor bank. *Id.* at 338–39. Southeastern contends that because Mr. Musselwhite's authorized agent prepared and signed the drafts in this case, Great Western should be held to be a payor bank.

In a footnote, the Middle District of Florida recognized the argument that Southeastern is making. "Thus, at least in the new Fifth Circuit the determination of whether a draft listing both the bank and a customer designates the bank as a drawee is dependent upon whether the payee or the bank's customer drew the bill." *Gathercrest Ltd. v. First American Bank and Trust*, 649 F.Supp. 106, 116 n. 2 (M.D.Fla.1985), *aff'd*, 805 F.2d 995 (11th Cir.1986). Southeastern's argument overlooks one crucial fact—the adoption of Fla.Stat.Ann. § 674.1061(3).

As noted above, the Uniform Commercial Code was revised in 1990. New section 4–106 provides as follows:

> If a draft names a nonbank drawee and it is unclear whether a bank named in the draft is a co-drawee or a collecting bank, the bank is a collecting bank.

Fla.Stat.Ann. § 674.1061(3). This Code Section is not consistent with the Fifth Circuit's rule, and Southeastern's argument, that the status of the drawee's bank is determined by who signed the draft. If that rule were followed, it would never be unclear whether a bank was a co-drawee or a collecting bank. This is not to say that who signed the draft cannot be considered when determining if a draft is ambiguous. Certainly, this case is a much closer one because Mr. Musselwhite's agent signed the draft. However, the adoption of § 674.1061(3) clearly shows that there is no hard and fast rule for determining payor bank/collecting bank status. Rather, the Code now provides its own "tie-breaker" in favor of collecting bank status in the case of an ambiguous draft. Given that the drafts in this case are ambiguous, this Court finds that Great Western Bank is a collecting bank notwithstanding the fact that Mr. Musselwhite's authorized agent signed the drafts. Such a result is clearly allowed under the Revised Uniform Commercial Code.

In sum, the drafts in this case are ambiguous as to whether Great Western Bank is a drawee. The Advices sent along with the drafts, and the fact that Mr. Musselwhite had to approve the drafts before they were paid, show that Great Western acted as a collecting bank. Moreover, Fla.Stat.Ann. § 674.1061(3) provides that if a draft is ambiguous as to whether a bank named with a nonbank drawee is a co-drawee or a collecting bank, it is a collecting bank. Accordingly, Great Western Bank was a collecting bank with regard to these drafts.

**C. What Liability Does a Collecting Bank Have for Failure to Seasonably Return Documentary Drafts?**

Having found that Great Western Bank was a collecting bank, the question then becomes what liability attaches when a collecting bank fails to seasonably return

documentary drafts. Fla.Stat.Ann. § 674.202 provides that a collecting bank must exercise ordinary care in its day-to-day operations. However, § 674.202(1)(b) specifically excludes sending notice of dishonor or nonpayment of a documentary draft from those functions. Collection of documentary drafts is governed by Section 5 of Article 4 of the UCC. Fla.Stat.Ann. § 674.501 *et seq.* However, that section does not state whether a collecting bank must exercise ordinary care in seasonably returning documentary drafts or whether a collecting bank is strictly liable for failure to seasonably return documentary drafts. The distinction is an important one in this case because, if an ordinary care standard applies, Fla.Stat.Ann. § 674.103(5) provides that the only damages recoverable are those that would not have occurred had the bank exercised ordinary care. Southeastern Bank has conceded that, if § 674.103(5) applies, it cannot prove that it suffered damages because of Great Western's failure to exercise ordinary care given that Southeastern Bank gave immediate credit on the documentary drafts to its depositor, Steve James Ford. Thus, if a collecting bank is only required to exercise ordinary care in relation to the collection of documentary drafts, Southeastern Bank cannot recover any damages in this case and Great Western is entitled to summary judgment.

■■■ There is little case law on this issue. Southeastern Bank makes a plausible argument, based upon statutory construction, that a collecting bank should be strictly liable for its failure to timely return documentary drafts. Nevertheless, this Court finds that the better-reasoned approach is that a collecting bank's duty is one of ordinary care with respect to the return of documentary drafts. Nowhere in the Uniform Commercial Code does it state that a collecting bank is strictly liable for its failure to seasonably return documentary drafts. Rather, it seems more reasonable to hold that the documentary drafts were excluded from UCC 4–

202(a)(2) so that they could be given their own coverage in Section 5 of Article 4. The duty of ordinary care still applies to a collecting bank's collection of documentary drafts.

[A] bank purchasing a documentary draft owed a duty to its seller to see that the documentary tender owed the buyer under the underlying sales or other transaction was in fact made, or that the seller was informed of the reasons why the transaction had gone awry. Since documentary drafts are usually noncash items, or items sent for collection and remittance, a failure to receive remittance within a normally expected time should trigger a duty to trace as a facet of the *duty of ordinary care* in sending, and at least provoke a duty of inquiry.

William D. Hawkland, J. Fairfax Leary, Jr., and Richard M. Alderman, Uniform Commercial Code Series § 4–501:01 at Westlaw pages 7–8 (1984) (emphasis added); *see also Gathercrest Ltd. v. First American Bank and Trust,* 649 F.Supp. at 117–18 (holding that collecting bank had duty to exercise ordinary care with respect to collection of documentary draft and measuring damages under 4–103(5)). Accordingly, the Court finds that Great Western was a collecting bank and owed only a duty of ordinary care to seasonably return the documentary drafts. Great Western is entitled to summary judgment given Southeastern's admission that it cannot prove that it suffered damages because of Great Western's failure to exercise ordinary care.

### III. *CONCLUSION*

Although the Court made preliminary findings on other issues in its December 11, 1995 order, it is unnecessary for the Court to address those issues given its ruling above. Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED** that Great Western Bank's Motion for Summary Judgment on Southeastern Bank's counterclaim be and is granted.

Exhibit 1

DERRICK MUSSELWHITE A/T SALES ATTN: JOAN FOX
15 SOUTH DOLLINS AVENUE
ORLANDO, FLORIDA 32805

GREAT WESTERN BANK
801 DEAUVILLE DRIVE
ORLANDO, FLORIDA 32805

Pay To The
Order Of _____ STEVE JAMES FORD INC

TEN THOUSAND SIX HUNDRED FIFTY DOLLARS AND NO/100------------------------------

Date ___ 12-6- ___ 19 __ 93

$ ___ 10,650.00

_____ Dollars

| YEAR | MAKE | MODEL | COLOR | MILES | SERIAL NUMBER |
|------|------|-------|-------|-------|---------------|
| 1993 | FORD | ESCORT | BLUE | 122 | 1FAPP15J5PW357446 |

☐ Air Conditioning ☐ Automatic ☐ Cruise ☐ Power Windows

☐ Stereo ☐ Tape ☐ Tilt ☐ Power Seats ☐ Power Locks

_____
Authorized Signature

Pay or Return
Within 7 Days

Enclosed Documents Must Be Notarized and Sealed
Payee Reserves the Right to Inspect Enclosed Documents