**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 20 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STATE BANK & TRUST,

    Plaintiff - Appellee and
    Cross-Appellant,

v.

FIRST STATE BANK OF TEXAS,

    Defendant - Appellant and
    Cross-Appellee.

Nos. 98-5243, 99-5131, 99-5135
(D.C. No. 97-CV-277-B)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **ANDERSON** and **LUCERO**, Circuit Judges.

Plaintiff-appellee State Bank & Trust, N.A. ("State Bank") sued defendant-appellant First State Bank of Texas ("Bank of Texas") to recover, under Texas law, the amount of a cashier's check issued by Bank of Texas and two documentary drafts issued by Bank of Texas customer Buzz Speer. Bank of Texas counterclaimed to recover, under Oklahoma law, the face amount of a cashier's check issued by State Bank and seven documentary drafts that appeared

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

on their face to be issued by State Bank customer Ventura Classics. The trial court granted summary judgment to State Bank on its claims and in a non-jury trial held that State Bank was not liable on any of Bank of Texas's counterclaims. In the appeal on the merits, only Bank of Texas's counterclaims are at issue. The other appeal and cross-appeal concern the trial court's award of costs and attorneys' fees to State Bank.

These related appeals raise state law issues under Oklahoma and Texas law. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion    .

**I**

The banks' customers, Speer and Ventura Classics, sold used automobiles to one another. Typically, payment was accomplished by means of a documentary draft. The buyer of an automobile would prepare a documentary draft consisting of an envelope displaying payment information. The buyer would then send the draft to the seller who would place the title documents for the automobile being purchased inside the envelope and deposit the documentary draft with his own bank. The seller's bank would forward the draft and title document to the buyer's bank for payment or collection. Once a draft was received by the buyer's bank, the bank would call the buyer and ask him to inspect the draft. The buyer was

required to verify the draft, determine whether the title documentation was in order, and instruct the bank either to pay the draft or to return the draft unpaid.

At issue in this appeal are seven documentary drafts drawn on Ventura's account and presented by Bank of Texas to State Bank for payment ("State Bank drafts"). On receipt of the first five drafts, totaling $87,750, Bank of Texas gave Speer immediate credit and Speer withdrew the funds before the drafts were presented to State Bank for payment or collection. When State Bank received the forwarded drafts, it called Ventura's representative, Goss, to verify the drafts. Goss did not authorize payment. Accordingly, State Bank returned the drafts to Bank of Texas unpaid. However, it did not do so until several days after the period stated on the drafts for payment or return.

On receipt of the returned drafts, Bank of Texas resubmitted the drafts to State Bank along with a handwritten note from Judy Massey, a vice president at Bank of Texas, stating "Dispute of Date of Return." The note was accompanied by several photocopied sections of the Uniform Commercial Code ("UCC") concerning a bank's payment deadlines. In response to the second receipt of the drafts, an employee of State Bank, Teresa Bray, issued a cashier's check in the amount of $87,750 to pay for the drafts. The check was mailed to Bank of Texas before the State Bank employee responsible for Ventura's account, Vice President

Coy Gallatin, was made aware of the issuance of the check. He was thus prevented from retrieving the check from the mail.

The following day, State Bank informed Bank of Texas that the cashier's check had been issued mistakenly and sent without authorization and, consequently, that a stop payment order was being placed on the check. Bank of Texas claimed to have received the check and submitted it for payment prior to receipt of notice of the stop payment order. After receipt of the first five documentary drafts at issue, Bank of Texas received two additional drafts, totaling $36,800, for which it gave immediate credit to Speer's account followed by Speer's immediate withdrawal of the funds.

After a bench trial, the district court ruled that State Bank was not liable on Bank of Texas's claims. See State Bank & Trust, N.A. v. First State Bank of Texas, No. 97-CV-277-B (N.D. Okla. Oct. 21, 1998) ("State Bank I") (findings of fact and conclusions of law). Bank of Texas appeals the district court's ruling on its counterclaims.

The district court awarded State Bank $77,335.76 in attorneys' fees and $14,250.24 in costs. See State Bank & Trust, N.A. v. First State Bank of Texas, No. 97-CV-277-B, at *11-13 (N.D. Okla. Jun 21, 1999) ("State Bank III"). The court also awarded interest at the rate of 4.879% per annum. See id. Bank of

Texas appealed these awards and State Bank cross-appealed arguing that the district court improperly denied the award of certain costs and fees.[1]

## II. State Bank's Counter Claims

On appeal from a bench trial we review factual findings by the district court for clear error and the district court's determinations of law de novo. See Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist., 226 F.3d 1170, 1177-78 (10th Cir. 2000). A district court's decision to admit or to exclude evidence is reviewed for abuse of discretion. See Pierce v. Shorty Small's of Branson, Inc., 137 F.3d 1190 (10th Cir. 1998).

### A. Collecting v. Payor Bank

The trial court concluded, as a matter of law, that State Bank was not a payor bank under Oklahoma law with respect to the State Bank Drafts, but rather was a collecting bank. Bank of Texas contests this finding and asserts that as a payor bank State Bank should be subject to strict liability for failure to pay the drafts within the time allotted by statute.[2]

---

[1] Citations to the briefs and record in No. 98-5243, the appeal on the merits, are to "[Party's] Br. A" or "[Party's] App. A." Citations to the briefs and record in 99-5131, the appeal on the award of attorneys' fees, are to "[Party's] Br. B" or "[Party's] App. B."

[2] Bank of Texas, citing the statement of undisputed facts in its own Summary Judgment Motion, claims that "State Bank admitted it is a payor bank with respect to the Drafts." (Appellant's Br. A at 16). This claim is spurious. State Bank, in its response to Bank of Texas's motion for summary judgment,

(continued...)

Under Oklahoma law, a payor bank is defined as "a bank that is the drawee of a draft," Okla. Stat. Ann. tit. 12A, § 4-105(3),[3] and a drawee is the "person ordered in a draft to make payment," § 4-104(a)(8). A collecting bank is "a bank handling an item for collection except the payor bank." § 4-105(5). Section 4-106 details when a bank is a collecting bank:

> (a) If an item states that it is "payable through" a bank identified in the item, (i) the item designates the bank as a collecting bank and does not by itself authorize the bank to pay the item, and (ii) the item may be presented for payment only by or through the bank.
> (b) If an item states that it is "payable at" a bank identified in the item, (i) the item designates the bank as a collecting bank and does not by itself authorize the bank to pay the item, and (ii) the item may be presented for payment only by or through the bank.
> (c) If a draft names a nonbank drawee and it is unclear whether a bank named in the draft is a co-drawee or a collecting bank, the bank is a collecting bank.

In determining whether State Bank was a payor bank or a collecting bank, it is necessary to keep in mind the spirit of these terms of art. To the lay person unfamiliar with the UCC, it would seem that a collecting bank collects money from a payor bank. In fact, these terms do not describe a relationship between two banks, but rather characterize the type of relationship a bank has with its

---

[2](...continued)
made clear that it considered itself a collecting bank with regard to the drafts and disagreed with Bank of Texas's assertion of the so-called "undisputed fact" that State Bank was a payor bank. (I Appellant's App. A at 208-210.)

[3] Unless otherwise specified, all references to code sections in this opinion are to Okla. Stat. Ann. tit. 12A.

customer.  In <u>South Carolina National Bank v. First Union National Bank</u>, 427

S.E.2d 169, 170 (S.C. 1993), the court distinguished a collecting bank from a

payor bank in the following manner:

> The receiving bank . . . either forwards payment from the buyer's
> account to the seller's bank, or collects the payment from the buyer
> and forwards it to the seller's bank.  The bank is a "payor bank"
> when the draft is paid in the first way and is a "collecting bank"
> when payment is made in the second manner.

At the outset, we note that because State Bank could not pay drafts drawn on

Ventura's account unless authorized by Ventura, the relationship between State

Bank and its customer was in the nature of one between a collecting bank and its

customer.

It is undisputed that when there is ambiguity as to whether the named bank

in a draft is the co-drawee or the collecting bank, the named bank will be deemed

a collecting bank.  <u>See</u> § 4-106(c).  In the instant case, the parties disagree

whether the particular drafts at issue were ambiguous.  Bank of Texas claims "the

Drafts quite clearly show, as a matter of law, that State Bank is a payor bank."

(Appellant's Br. A at 17.)

The drafts contain Speer's name on the "Pay to the order of" line.  (<u>See,

e.g.</u>, II Appellant's App. A at 412.)  On the bottom left hand corner, the drafts are

designated "To" State Bank and Trust; immediately next to State Bank's address

is written "Ventura Classic, Brian Goss."  (<u>Id.</u>)  Notably, there is no account

number written on the drafts. Accompanying each draft was a "collection letter" stating, among other things, the amount to be collected, the number of days of "sight" (i.e., the number of business days in which the bank of the buyer had to return the drafts; the default is one day), and the words "Drawn on: Ventura Classics." (See, e.g., id. at 413.)

Relying on Great Western Bank v. Steve James Ford, Inc., 915 F. Supp. 392 (S.D. Ga. 1996), the trial court found that State Bank was a collecting bank with regard to the drafts at issue. Great Western Bank involved a check-kiting scheme gone bad. The facts were similar to the facts in this case. On receipt of the drafts at issue in Great Western, the plaintiff bank gave its customer immediate credit. See id. at 394. The defendant bank's customer did not authorize payment of the drafts; thus, the defendant bank returned the drafts to the plaintiff bank. The defendant bank did not, however, return the drafts within the period provided for on the drafts, and so the plaintiff bank brought suit. See id. The defendant bank's name appeared on the lower right side of the draft immediately next to the bank customer's name and address. See id. at 395. As in the current case, the drafts contained no account number. See id.

Applying Florida law, which is substantially similar to Oklahoma law in this field, the court in Great Western found that it was "clear from looking at the surrounding circumstances that [the defendant bank] was a collecting bank." Id.

The key factors leading the court to this conclusion were the collection item sent and addressed to the defendant bank and "most importantly" the fact that the defendant bank was not authorized to pay the drafts without its customer's approval. Id. Because the drafts were ambiguous as to whether the defendant bank was a drawee/payor bank or a collecting bank, Florida's adoption of the Revised UCC required the court to find the defendant bank was a collecting bank. See id. at 396 (citing UCC § 4-106).

The current case is almost identical to Great Western. Not only were the drafts accompanied by collection letters and was State Bank not authorized to pay the drafts without Ventura's approval, but the status of State Bank as a payor or collecting bank was ambiguous from the face of the drafts due to the location of State Bank's name and address on the face of the drafts. As such, the trial court properly found that State Bank was a collecting bank.[4]

---

[4] Bank of Texas mistakenly relies on Reynolds-Wilson Lumber Co. v. People's National Bank, 699 P.2d 146 (Okla. 1985) (per curiam), for the proposition that the drafts at issue in this case unambiguously establish State Bank was a payor bank. Reynolds-Wilson was decided before the 1991 revisions to Oklahoma's Commercial Code and relied on the prior default rule that a draft must contain "an express statement on [its] face . . . indicating it is to be paid 'at' or 'through' a bank, before that bank is to be treated as a mere conduit [i.e., a collecting bank] and not a payor." Id. at 151 (citations omitted). The 1991 revisions expressly reverse the presumption that a bank is a payor bank unless indicated otherwise. The revisions do this by providing that if a draft is ambiguous as to whether a bank is a payor bank or a collecting bank, the bank is a collecting bank. See § 4-106(c). It may be true that where a draft contains the

(continued...)

Because we find the drafts at issue in this case ambiguous as to the status of State Bank and because Bank of Texas has not shown that the drafts were actually unambiguous, we affirm the district court's finding that State Bank was a collecting bank. Consequently, State Bank was not liable as a matter of law under § 4-302(a)(2) for returning the drafts outside the allotted time.[5]

## B. Transfer Warranties

Section 4-207(a) provides that a "collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that . . . [a]ll signatures on the item are authentic and

---

[4](...continued)
magic words "at" or "through," the bank to which the words refer is a collecting bank. However, it is no longer true, as the court held in Reynolds-Wilson, that without those words a bank is not a collecting bank. In fact, the official commentary to Article 4 directly addresses this issue. The comment states:

> Often a draft will show that it is drawn on a business drawee . . .
> with the name of a bank appearing under the name of the business
> drawee. Under current Oklahoma law, any ambiguity may cause the
> bank to be deemed a co-drawee and payor bank along with the
> company. Reynolds-Wilson Lumber Co.[, 699 P.2d at 149]. The
> revisions will reverse that conclusion. Under Rev. Sec. 4-106(c),
> where it is unclear whether the bank named in the draft is a co-
> drawee or a collecting bank, the bank will be a collecting bank only.

Okla. Stat. Ann. tit. 12A, Commentary on Revised Uniform Commercial Code Articles 3 and 4–Negotiable Instruments and Bank Deposits and Collections, as enacted in Oklahoma, Article 4, Co-Drawee v. Collecting Bank.

[5] Because we affirm the district court's holding that State Bank was a collecting bank, we need not reach Bank of Texas's argument that the trial court erred in finding that, even if State Bank was a payor bank, it had a valid defense to payment of the drafts under § 4-302(b).

authorized." Section 4-207(c) directs that "[a] person to whom [such] warranties . . . are made and who took the item in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the item plus expenses and loss of interest incurred as a result of the breach." Article 4 of the Oklahoma Commercial Code takes its definition of "good faith" from section 3-103. See § 4-104(c). Section 3-103(a)(4) defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing."

The trial court concluded that as a collecting bank State Bank was entitled to transfer warranties from Bank of Texas under § 4-207(a)(2) and that Bank of Texas breached its warranty to State Bank that Goss's signatures on the drafts were authentic and authorized.

Bank of Texas argues it did not "transfer" the drafts to State Bank in exchange for the cashier's check as required by the code for transfer warranties to apply. In support of this contention, Bank of Texas claims the "undisputed evidence" shows that the cashier's check was issued in response to Bank of Texas's valid claim of late return rather than as a "settlement or other consideration" for the drafts. (Appellant's Br. A at 27.) Thus, Bank of Texas's argument continues, transfer warranties do not apply because Bank of Texas received payment in satisfaction of its late return claim.

- 11 -

Bank of Texas's assertion that the undisputed evidence shows the cashier's check was issued in payment of its valid claim of late return, and not in payment of the drafts, is unsupported by the record and contradicted by Bank of Texas's own admissions. The lower court's determination of the reason motivating State Bank's issuance of the cashier's check is a finding of fact. This finding of fact is of utmost importance to the conclusion of law concerning whether transfer warranties applied and whether such warranties were breached by Bank of Texas. We conclude that Bank of Texas has waived its right to challenge the factual finding that the cashier's check was issued in payment of the drafts and not in payment of its claim of late return because in the pretrial order it stipulated and admitted to the fact that "State Bank issued the State Bank Cashier's Check . . . to pay the five state Bank Drafts." (II Appellant's App. A at 375.) Moreover, the evidence at trial gathered from both parties' witnesses demonstrates that the cashier's check was issued to pay for the drafts.

Even if Bank of Texas had not waived its arguments concerning the motivation for issuing the cashier's check, we would still affirm the judgment of the district court. Where a case is submitted with stipulated facts, we still review the district court's findings for clear error.    See Adair State Bank v. Am. Cas. Co., 949 F.2d 1067, 1072 (10th Cir. 1991). Under this standard of review, we will not disturb the district court's decision to credit those witnesses offered by

- 12 -

both parties.  See Pabst v. Oklahoma Gas & Elec. Co. , 228 F.3d 1128, 1135 (10th Cir. 2000) (finding no clear error in the district court's decision to credit the plaintiff's witness rather than the defendant's witness);  see also  Anderson v. City of Bessemer City , 470 U.S. 564, 573-74 (1985) (discussing the clearly erroneous standard).

In the alternative, Bank of Texas argues that even if transfer warranties applied to the drafts, State Bank cannot recover on an alleged breach of such warranties because it did not take them in good faith as is required by § 4-207(c). [6] Bank of Texas argues that State Bank did not "take" the drafts for purposes of the code the first time it received them because State Bank returned them to Bank of Texas.  Moreover, when State Bank did take the drafts the second time they were sent, State Bank took them because of the claim of late return and issued the

---

[6] Bank of Texas also argues that the good faith requirement of § 3-416(b) applies.  This Court, however, will not consider arguments made under Article 3. The trial court expressly held the documentary drafts were not negotiable instruments and thus not subject to Article 3.  We cannot find in appellant's brief any argument that the trial court erred in this conclusion, nor that the documentary drafts were actually negotiable instruments.  Since any such claims were not raised on appeal, they are waived.

Because Article 3 does not apply to the documentary drafts, we also reject appellant's argument that State Bank waived the issue of signature authorization or authenticity under § 3-308 and thus was not entitled to transfer warranties. Notably, this argument borders on the frivolous even if § 3-308 did apply.  State Bank explicitly denied the authenticity of Ventura's signature in the pleadings.

cashier's check in satisfaction of that claim and not in response to the actual drafts.

Bank of Texas's argument hinges on whether or not State Bank took the drafts in good faith because when State Bank did finally "take" the drafts, it issued the cashier's check in satisfaction of the drafts and not in satisfaction of the claim of late return. Bank of Texas's only argument that State Bank did not take the drafts in good faith relies on the implication that State Bank knew the signatures on the drafts were unauthorized but issued the cashier's check anyway; therefore, State Bank did not act in good faith. After reviewing the record, we find the evidence supports the inference that State Bank took the drafts and issued the cashier's check in good faith, i.e., with "honesty in fact and [in] the observance of reasonable commercial standards of fair dealing." § 3-103(a)(4). [7]

In sum, we affirm the district court's conclusion that State Bank was entitled to transfer warranties because it was a collecting bank and acted in good faith. We further affirm the district court's finding that Bank of Texas breached its transfer warranties to State Bank that Goss's signatures on the drafts were authentic and authorized. [8]

---

[7] We note that Article 4 refers to the Article 3 definition of "good faith." See § 4-104(c).

[8] Because it is not necessary to the outcome of this appeal, we decline to reach State Bank's assertion that "[b]reach of warranty under the UCC is an

(continued...)

- 14 -

## C. Admission of Evidence

The district court admitted into evidence a chart created by Brenda Plowman, a State Bank employee, given to Bank of Texas's counsel only ten minutes before the commencement of the second day of trial. Bank of Texas, citing no legal authority and making no legal arguments, argues the trial court erred in admitting the chart.

We affirm the district court's admission of the second Plowman chart because the trial court did not abuse its discretion. "[Evidentiary] rulings generally are committed to the very broad discretion of the trial judge, and they may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment." Webb v. ABF Freight Sys., Inc., 155 F.3d 1230, 1246 (10th Cir. 1998). Moreover, a party is "entitled to a new trial only when the error affected the party's substantial rights." Id. (citation omitted). The ten minutes that Bank of Texas's counsel had to consider the chart and its supporting documentation was undoubtedly insufficient; however, the trial court took that circumstance into consideration in allowing the admission of the second Plowman chart. The court granted extra time to Bank of Texas's counsel to review the new information so that counsel

___

[8](...continued)
absolute defense to and defeats a claim of late return of an item." (Appellee's Br. A at 32 (emphasis in the original).)

could sufficiently prepare for cross-examining Plowman. In its cross-examination of Plowman, Bank of Texas was able to point out the errors it believed were in the chart. As such, Bank of Texas's substantial rights have not been affected.

### D. Ordinary Care

A collecting bank must exercise ordinary care in presenting an item or in sending an item for presentment. See § 4-202(a)(1). Section 3-103(a)(7) defines "ordinary care" as "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged."[9] Section 4-202(b) states that a "collecting bank exercises ordinary care . . . by taking proper action before its midnight deadline following receipt of an item." However, "[t]aking proper action within a reasonably longer time may constitute the exercise of ordinary care, but the bank has the burden of establishing timeliness." § 4-202(b).

The trial court, in its findings of fact, concluded that "[n]either State Bank [n]or Bank of Texas consistently followed the collection letter instructions accompanying documentary drafts or notations on the drafts so as to strictly comply with the time limitations set forth and both banks had a pattern and practice of late returns beyond the time specified by some additional days." State

---

[9] Section 4-104(c) of the Oklahoma Commercial Code refers to § 3-103 for the definition of "ordinary care."

Bank I, at *14. The court further found that State Bank had returned the seven

drafts now at issue "within a reasonable time." Id.

Bank of Texas argues the district court erred in holding State Bank did not

violate its duty of ordinary care by returning the drafts outside the stated sight

periods. It asserts that State Bank failed to establish a course of dealing showing

the parties regularly returned drafts outside the designated sight periods. Bank of

Texas properly notes that State Bank bore the burden of proving that it exercised

ordinary care and acted in a timely manner because State Bank did not meet the

"midnight deadline" of § 4-202(b).

We affirm the district court's finding of fact that the parties had a custom

of returning documentary drafts outside of the designated sight period and its

resulting conclusion that therefore State Bank's late return of the drafts was, as a

matter of law, performed with ordinary care. We stress, however, that our

affirmation rests largely on the deferential clearly erroneous standard of review

we are obliged to employ with regard to the district court's findings of fact.[10]

Unless, after reviewing the record and the arguments on appeal, we are

_____

[10] We note there was evidence in the record that might have caused us, if we had been the finder of fact, to rule differently. For example, the cross-examination of Plowman concerning her second chart, Bank of Texas's arguments that the Plowman Chart did not establish a course of dealing for returns, as opposed to payments, and Plowman's testimony that the late return of the drafts would have violated State Bank's policies.

- 17 -

completely unconvinced by the factfinder's conclusions, we must generally defer to the factfinder's experience with the mainsprings of human conduct as applied to the entirety of the case at hand. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400 (1990) ("In practice, the 'clearly erroneous' standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions.").

After careful review of Plowman's testimony at trial, upon which both parties seem to rely entirely for establishing their arguments on the course of conduct issue, and after careful review of the charts Plowman offered as evidence, we do not have a "definite and firm conviction that a mistake has been made." Sanpete Water Conservancy Dist., 226 F.3d at 1170. The drafts at issue were returned between one and six days late. Even a narrow reading of the Plowman chart establishes Bank of Texas had a custom of returning payment on drafts to State Bank between one and eight days late. Because State Bank's one to six day late returns of the drafts fell within the one to eight day custom, we affirm the district court's holding that State Bank exercised ordinary care in returning the drafts outside of the designated sight periods. Furthermore, because we affirm the district court's holding that State Bank did not breach its duty of ordinary care, we reject Bank of Texas's arguments that it is entitled to actual and consequential damages as a result of the alleged breach.

## E. The Cashier's Check

### 1. State Bank's Obligation to Pay the Cashier's Check

Upon receipt of the drafts for the second time, State Bank, through its employee Teresa Bray, issued a cashier's check in payment of the drafts. When another employee of State Bank realized the cashier's check had been issued mistakenly, State Bank attempted, but failed, to retrieve the check from the mail. Consequently, the following day State Bank contacted Bank of Texas to inform Bank of Texas that the cashier's check had been issued mistakenly, without authorization, and thus a stop payment order had been placed on the check.

The trial court found State Bank was justified in issuing the stop payment under § 3-411(c)(ii)[11] because the drafts were forged and Speer was attempting to perpetrate fraud. Section 3-411(c) provides, in relevant part, that damages are not allowed under the section "if the refusal of the obligated bank to pay occurs because . . . the obligated bank asserts a claim or defense of the bank that it has reasonable grounds to believe is available against the person entitled to enforce the instrument."

Bank of Texas argues that § 3-411(c) only allows the issuer of a cashier's check to avoid damages, not to avoid payment of the check. This argument completely ignores § 3-305(a) which details general defenses an obliged party can

---

[11] Under Article 3, a cashier's check is an instrument. See § 3-104.

assert to the payment of an instrument. Specifically, that section allows the obligated party to assert

> a defense . . . stated in another section of this article or a defense . . . that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract.

§ 3-305(a)(2).

In support of the trial court's holding that State Bank was justified in stopping payment on the cashier's check, State Bank raises four arguments on appeal. First, State Bank claims Bank of Texas misrepresented material facts in its letter accompanying the drafts on their second return to State Bank. Second, State Bank argues it properly stopped payment due to the fact the check was issued by mistake. Third, it argues Bank of Texas did not give valid consideration for the cashier's check. Finally, State Bank argues Speer's underlying fraud vitiated the contracts, i.e., the drafts, and thus provided a defense to the enforcement of the contracts. Because we find State Bank's second defense to payment of the cashier's check sufficient to affirm the trial court's holding, we need not reach the other three arguments raised on appeal.

As discussed above, § 3-305(a)(2) allows an obliged party to assert defenses to payment of an instrument otherwise available under Article 3 of the Oklahoma Commercial Code. Section 3-418(b) provides "if an instrument has been paid or accepted by mistake . . . the person paying or accepting may, to the

- 20 -

extent permitted by the law governing mistake and restitution . . . revoke the acceptance." Section 3-409 defines "acceptance" as the "drawee's signed agreement to pay a draft as presented." Thus, in the case at issue, State Bank had accepted the cashier's check.

Under Oklahoma law, mistake of fact

is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

> 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,
> 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

Okla. Stat. Ann. tit. 15, § 63. The commentary to Article 3 of the Oklahoma Commercial Code states that:

> [I]f money is paid under a mistake of fact—that is, on the mistaken supposition that a specific fact exists which would entitle the payee to the money—and when the money would not have been paid if the payor had known the fact was otherwise, then the money generally can be recovered. The basis for the rule is that money paid through misapprehension of facts belongs, in equity and good conscience, to the person who paid it.

Okla. Stat. Ann. tit. 12A, Commentary on Revised Uniform Commercial Code Articles 3 and 4–Negotiable Instruments and Bank Deposits and Collections, as Enacted in Oklahoma, Article 3, Recovery of Payment by Mistake (citations omitted).

In the instant case, State Bank employee Bray mistakenly believed State Bank was authorized by its customer to issue the cashier's check, and thus she mistakenly issued the check. At trial, she testified she would not have issued the check had she known Goss had told State Bank not to pay for the drafts. Moreover, State Bank's behavior following the issuance of the cashier's check, i.e., the attempt to retrieve the check from the mail and the immediate placement of a stop order on the check, supports the conclusion that the bank mistakenly issued the check. Because of this mistake, State Bank had a viable defense to payment of the check and was able to revoke its acceptance under § 3-418(b). On this alternative ground, we affirm the district court's holding that State Bank was justified in stopping payment on the cashier's check.

## 2. Bank of Texas's Immunity from State Bank's Defenses to Payment of the Cashier's Check

According to § 3-418(c), State Bank cannot successfully invoke mistake as a defense to payment of the cashier's check if Bank of Texas "took the [cashier's check] in good faith and for value." Under §§ 3-305(a) and (b), State Bank cannot successfully assert a common law contract defense or other defense listed in Article 3 of the Oklahoma Commercial Code if Bank of Texas was a holder in due course. Section § 3-302(a)(2) defines a holder in due course as one who took an instrument "(i) for value, (ii) in good faith, . . . and (vi) without notice that any party has a defense or claim in recoupment described in subsection (a) of Section

3-305 of this title." Section 3-303(a)(3) states that an instrument is taken for value if it is "issued . . . as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due."

Bank of Texas argues that State Bank issued the cashier's check in payment of Bank of Texas's valid claim of late return. Therefore, under § 3-302(a)(2), the claim of late return was "value" transferred for the cashier's check.[12]

Earlier in this opinion, we affirmed the trial court's finding of fact that State Bank issued the cashier's check to pay for the drafts and not in response to Bank of Texas's claim of late return. Because State Bank issued the cashier's check to pay for the drafts—which were worthless because Ventura refused to authorize payment—rather than to pay for Bank of Texas's claim of late return, Bank of Texas transferred no value for the cashier's check. For this reason, Bank of Texas is not immune under § 3-418 to State Bank's defense of mistaken payment of the check.

As with the issue of whether State Bank was justified in stopping payment of the cashier's check, the parties raise numerous arguments on appeal to support

---

[12] Bank of Texas also argues it gave value for the underlying drafts which should be considered as giving value for the cashier's check. In support of this proposition it cites "Case #2" to comment four in the UCC Comment, 1991 Amendment to § 3-302. It is unclear how the comment cited supports the proposition of transferred value, i.e., that because Bank of Texas gave value to Speer for the documentary drafts, Bank of Texas therefore gave value to State Bank by transferring the documentary drafts to it.

their positions concerning whether Bank of Texas was immune to State Bank's defense to payment of the check. Because we conclude Bank of Texas did not take the cashier's check for value, we affirm, albeit on alternate grounds, the district court's holdings that State Bank could stop payment on the cashier's check and that Bank of Texas was not a holder in due course. Our reasoning makes it unnecessary to consider the parties' other arguments.

### III. Costs and Fees

The second set of appeals concerns the district court's award of costs and fees to State Bank. We review the decision to award attorneys' fees, and the amount awarded, for abuse of discretion. See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998); Bishop v. Equinox Int'l Corp., 154 F.3d 1220, 1224 (10th Cir. 1998). "Underlying factual findings will only be upset when clearly erroneous. However, a district court's statutory interpretation or legal analysis which provides the basis for the fee award is reviewable de novo." Bishop, 154 F.3d at 1224 (citations omitted).

The parties agree that Texas law applies to State Bank's primary claims and that Oklahoma law applies to Bank of Texas's counterclaims. The parties are also in accord concerning State Bank's entitlement under Okla. Stat. Ann. tit. 12, § 936 to attorneys' fees for its successful defense to payment of the cashier's check.

The trial court found that State Bank was not entitled to attorneys' fees on its primary claims under Texas law. The court further found that State Bank was not entitled to attorneys' fees under UCC[13] §§ 3-411(b) or 4-103(e) or under Okla. Stat. Ann. tit. 12A, § 4-207(c). However, because the court found the issues in State Bank's Texas law claims "inextricably intertwined" with the issues in Bank of Texas's Oklahoma law counterclaims, the court premised an award of fees under Okla. Stat. Ann. tit. 12, § 936 on the unsegregated bills of State Bank's attorneys. Notably, the court awarded State Bank one-third less than it requested due to the fact that the "Texas law phase of the case . . . [did] not support an award of attorneys' fees." State Bank III, at *11.

## A. State Bank's Cross-Appeal

## 1. Attorneys' Fees Under Texas Law

Because our determination of the issues raised in State Bank's cross-appeal affects the outcome of Bank of Texas's appeal, we address the issues presented in State Bank's cross-appeal first. State Bank argues the district court erred in holding that it could not recover attorneys' fees on its primary claims under Texas law. Specifically, State Bank claims it can recover attorneys' fees under Tex. Civ. Prac. & Rem. Code Ann. § 38.001, Tex. Bus. & Com. Code Ann. § 4.103(e)

---

[13] Because the trial court found that Oklahoma and Texas law are substantially the same as the UCC, the trial court, in its opinion, referred to the relevant UCC sections. See State Bank III at 4-5.

and Tex. Bus. & Com. Code Ann. § 3.411(b).  We address these arguments in turn.

### a.  Tex. Civ. Prac. & Rem. Code Ann. § 38.001

Under Texas Civil Practice and Remedies Code § 38.001, a "person may recover reasonable attorney's fees . . . if the claim is for . . . an oral or written contract."  The district court denied State Bank's claim for attorneys' fees on the grounds of § 38.001 because it held that the section does not apply to conversion actions and the drafts were not "contracts" because the contracting parties were the customers of the banks, not the banks themselves.

State Bank brings to our attention Guardian Bank v. San Jacinto Savings Association, 593 S.W.2d 860 (Tex. App. 1980).  In that case, the court expressly held that a "cashier's check is a written contract with the maker impliedly agreeing to pay to any authorized holder the face value stated therein."  Id. at 863. At summary judgment in this case, the district court ruled that State Bank was able to recover the value of the cashier's check.  Because a cashier's check is a "contract" under Texas law, we hold that State Bank could properly have been allowed attorneys' fees for its recovery of the value of the cashier's check under § 38.001(8).[14]  Accordingly, insofar as the district court implicitly held, as a matter

------

[14]  The cashier's check was issued to pay for three of the five drafts at issue in State Bank's primary suit against Bank of Texas.  See State Bank & Trust,

(continued...)

- 26 -

of law, that attorneys' fees were not available under Texas law for recovery on the cashier's check, we reverse.[15]

Citing First National Bank of Missouri City v. Gittelman, 788 S.W.2d 165 (Tex. App. 1990), State Bank also argues the district court erred in not allowing recovery of attorneys' fees on its successful conversion claim under § 38.001. Gittelman involved a bank's foreclosure on a car that served as collateral for a loan. See 788 S.W.2d at 166-67. The court noted that although a conversion claim does not support an award of attorneys' fees under § 38.001(8), a contract claim does. See Gittelman, 788 S.W.2d at 171. The trial court's finding that the bank converted Gittelman's car implied the bank did not have authority to sell the car. See id. This, in turn, supported a finding of breach of contract and thus an award of attorneys' fees under a breach of contract theory. See id.

State Bank's reliance on Gittelman is misplaced. Gittelman does not hold that facts supporting a conversion claim always support a breach of contract

_____

[14](...continued)
N.A. v. First State Bank of Texas, No. 97-CV-277-B, at *4-5 (N.D. Okla. June 10, 1998) ("State Bank II").

[15] We find unconvincing State Bank's novel state law claim that the documentary drafts somehow created contractual relationships between the banks, and we affirm the denial of attorneys' fees as to the claims regarding the Bank of Texas documentary drafts. Also, although we find State Bank's argument that § 38.001 "does not necessarily require that the party seeking fees on the contract claim be a party to that contract" interesting, we can find no precedent for this position under Texas law, nor has State Bank cited any. We decline to create any such precedent.

- 27 -

claim.  In Gittelman, there were actual written contracts between the bank and its customer.  See id. at 167 (noting that the trial court found the bank had breached the relevant written contracts).  Although the opinion is not explicit as to the terms of those contracts, it seems likely that the contracts at issue were loan documents signed at the time Gittelman designated her car as collateral.  Thus, when the bank converted Gittelman's car, it breached the terms of the contract dealing with collateral placed on the loan.

In State Bank's case, the conversion claim, as stated in the complaint, was that "Bank of Texas improperly exercised dominion and control over the titles to the automobiles that corresponded to each of the Bank of Texas Drafts . . . and thereafter improperly transferred and converted some or all of those titles to Speer without paying State Bank the funds due."  (I Appellant's App. A at 5.)  The facts supporting the conversion claim do not support a breach of contract claim between the two banks because, as discussed above, the documentary drafts do not establish a contract between the banks.  Thus, we hold that the trial court properly denied State Bank's request for attorneys' fees under § 38.001 for its success on the conversion claim.

### b.  Tex. Bus. & Com. Code Ann. § 4.103(e)

Tex. Bus. & Com. Code Ann. § 4.103(e) allows damages, other than actual damages, if there is "bad faith."  We reject State Bank's argument that it is

entitled to recover attorneys' fees under this section because the trial court explicitly noted that "no . . . finding [of bad faith] was entered in this case." State Bank III, at *7. Given the trial court was presented with the same arguments we are under § 4.103(e), we think the foregoing statement implicitly demonstrates that the trial court affirmatively did not find bad faith on the part of Bank of Texas. We therefore affirm the trial court's holding that State Bank could not recover attorneys' fees under § 4.103(e).

### c. Tex. Bus. & Com. Code Ann. § 3.411(b)

Section 3.411(b) provides that a person who enforces a right to a check "is entitled to compensation for expenses and loss of interest resulting from . . . nonpayment and may recover consequential damages." Section 3.411(c) provides that expenses or consequential damages are not recoverable if the obligated bank refused to pay because it had "reasonable grounds to believe [it had a claim or defense] . . . available against the person entitled to enforce the instrument."

The trial court denied recovery of attorneys' fees to State Bank under § 3.411 because it found that it "did not and [could not] . . . conclude that Bank of Texas had no reasonable basis for asserting the positions taken." State Bank III, at *7. We affirm the trial court and reject as frivolous State Bank's assertion that the trial court's finding "was inconsistent with the court's earlier finding that Bank of Texas had _no_ viable defense to payment of that check under § 3-411(c)."

(Appellee's Br. B at 39.)  Although the court ultimately found Bank of Texas had no viable defense, that determination did not preclude the court from finding that Bank of Texas had a reasonable basis for asserting defenses to payment.

### 2.  Attorneys' Fees Under Oklahoma Law

In its cross-appeal, State Bank also asserts the trial court erred in denying attorneys' fees under Oklahoma law for Bank of Texas's counterclaims. Specifically, State Bank asserts it was entitled to recover attorneys' fees under Okla. Stat. Ann. tit. 12, § 936 and under Okla. Stat. Ann. tit. 12A, § 4-207(c).

### a.  Okla. Stat. Ann. tit. 12, § 936

Okla. Stat. Ann. tit. 12, § 936 provides as follows:

> In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Although the district court awarded State Bank attorneys' fees under § 936 for its successful defense to payment of the cashier's check, it did not award fees under that section for State Bank's defense to payment of the documentary drafts.  On appeal, State Bank claims "documentary drafts logically fall within the litany of monetary obligations set forth by § 936."  (I Appellee's Br. B at 40.)  Notably, every one of the "litany of monetary obligations" set forth in § 936 involves some

sort of instrument on which suit would be brought because of a direct obligation established by the instrument between a plaintiff and a defendant. Here, Bank of Texas's counterclaims under Oklahoma law were based on the claim that State Bank was required to compensate Bank of Texas for the value of the drafts because State Bank returned the documentary drafts to Bank of Texas in an untimely manner. The counterclaims were not brought for payment of the drafts themselves.

Although State Bank properly prevailed on the counterclaims, the counterclaims did not involve a suit on a contract, a note, a bill, etc., as is required under § 936. We therefore hold that the trial court did not err in failing to grant State Bank attorneys' fees for its successful defense against the Bank of Texas counterclaims.

### b. Okla. Stat. Ann. tit. 12A, § 4-207

The trial court held, and we affirm, that Bank of Texas breached the transfer warranties it owed to State Bank on the State Bank drafts. Okla. Stat. Ann. tit. 12A, § 4-207(c) provides recovery "equal to the loss suffered . . . , but not more than the amount of the item plus expenses and loss of interest" to one who took an item in good faith and who experienced a breach of transfer warranties. On appeal, State Bank argues the trial court erred by not allowing it to recover attorneys' fees as a measure of "expenses" under § 4-207(c).

- 31 -

We have carefully considered the arguments raised on appeal by both State Bank and Bank of Texas. Because we agree with the district court's thorough discussion of the availability of attorneys' fees as expenses under § 4-207, we affirm the denial of attorneys' fees pursuant to that section.[16]

### B. Bank of Texas's Appeal

### 1. Inextricably Intertwined Doctrine

Although the district court did not find an independent justification for awarding attorneys' fees for State Bank's primary claims under Texas law or for the counterclaim concerning the documentary drafts under Oklahoma law, the court found the claims and counterclaims "inextricably intertwined" for purposes of awarding attorneys' fees.

> [T]he Court finds the issues surrounding the cashier's check could not be adequately addressed without a thorough understanding of the transactions involving the documentary drafts which led to the issuance of the cashier's check and the stop payment.

---

[16] We decline to consider State Bank's claim—made in its Reply Brief on cross-appeal—that it is entitled to fees incurred enforcing subpoenas. State Bank's opening brief on cross-appeal states "the trial court did err in concluding that attorneys' fees may not be recovered under UCC §§ 4-207(c), 4-103(e) and 3-411(b), and fee statutes set forth under Texas and Oklahoma law. State Bank urges that only to this extent should the trial court's Order and Judgment be reversed." (Appellee's Br. B at 8.) We have reviewed State Bank's opening brief on cross-appeal and can find no mention of the subpoena fees issue. Since State Bank did not argue the subpoena fees issue in its opening brief, Bank of Texas was not given the chance to properly respond to the argument and we decline to consider the issue. See, e.g., State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

The Court observes that this was a complex case in which the similarity of the claims, defenses, amount of the cashier's checks and the underlying transactions required considerable concentration in order to keep the primary claims and the counterclaims straight. The legal research necessarily overlapped so that a finding that the claims and defenses and underlying facts are, to an extent, "inextricably intertwined" is supportable by the record.

State Bank III, at *10. The court found that State Bank's principal claims were governed by Texas law which, the court held, did not support an award of attorneys' fees. Therefore, the court reduced the award by one third. See id., at *10-11.

As discussed, there is no question that State Bank was entitled to attorneys' fees under Oklahoma law for its successful defense to payment of the cashier's check. Bank of Texas's challenge on appeal to the award of attorneys' fees under Oklahoma law concerns the trial court's application of the "inextricably intertwined" doctrine. Specifically, Bank of Texas argues that (1) the claims involved in these appeals are not intertwined, (2) the "inextricably intertwined" doctrine does not apply to this case, and (3) State Bank was required, under Oklahoma law, to segregate its requests for fees.

In RJB Gas Pipeline Co. v. Colorado Interstate Gas Co., 813 P.2d 1, 12-14 (Okla. App. 1990), the court reviewed a trial court's grant of attorneys' fees to the prevailing party in an action that primarily concerned contractual obligations. The trial court awarded attorneys' fees to the prevailing party without requiring

that party to segregate out the fees incurred in support of the unsuccessful claims. See id. at 13. Citing the Supreme Court's decision in Hensley v. Eckerhart, 461 U.S. 424 (1983), a civil rights case, the court noted that "in some instances it is unnecessary to apportion attorney fees between successful and unsuccessful claims." RJB Gas Pipeline, 813 P.2d at 14. Ultimately, the court held that a party is "not allowed attorney fees on claims unless permitted by statute." Id.; see also Tibbetts v. Sight 'N Sound Appliance Ctrs., Inc., 6 P.3d 1064, 1066 (Okla. App. 1999) ("Oklahoma continues to stand firmly committed to the American Rule, under which a prevailing party may not recover a counsel-fee award absent an authorizing statute or contract." (citing Morgan v. Galilean Health Enters., 977 P.2d 357, 362 (Okla. 1998)). Because the prevailing party's punitive damages claims were tort claims and no Oklahoma statute supports an award of fees on tort claims, the court reversed and remanded to the trial court to hold a new hearing on the proper amount of fees. See RJB Gas Pipeline, 813 P.2d at 14.

Although we are sympathetic to the difficulty of segregating attorneys' fees between claims that are so closely related, we can find no support for an "inextricably intertwined" exception to the general Oklahoma rule that attorneys' fees can only be awarded where there is an independent statutory basis. We decline to affirm an unsupported legal conclusion of state law. We reverse the

district court's award of attorneys' fees to the extent it awards fees under Oklahoma law pursuant to the inapplicable "inextricably intertwined" doctrine.

We note, however, that Texas law does support an exception to the general requirement of segregating attorneys' fees. The exception applies "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." Panizo v. Young Men's Christian Ass'n, 938 S.W.2d 163, 170 (Tex. App. 1996) (citations omitted); see also Keeper v. First Care, Inc., 794 S.W.2d 879, 882 (Tex. App. 1990); Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App. 1987). We leave to the trial court the task of determining what impact, if any, the cited Texas authority should have on a fee award to State Bank.

**2. Costs and Fees Related to Denton Texas Suit**

Bank of Texas originally filed a lawsuit against State Bank in Denton, Texas, on the claims that ultimately became the counterclaims in the instant suit. That suit was dismissed. State Bank sought recovery for the costs and attorneys' fees associated with that case (i.e., fees incurred for the removal petition and filing a motion to transfer) in the instant suit. Citing absolutely no legal authority, Bank of Texas asserts that recovery of those costs and fees in this suit is improper because State Bank "at least [should have] attempted to seek such

recovery from the Denton judge." (Appellant's Br. B at 20.) We reject this argument as wholly unsupported by legal authority as well as unpersuasive. The district court did not abuse its discretion in awarding fees arising out of the Denton suit except to the extent such fees were premised on the application of the inextricably intertwined doctrine under Oklahoma law.

Bank of Texas also claims the district court erred in awarding fees to State Bank for State Bank's unsuccessful attempt to recover punitive damages and for State Bank's unsuccessful motion for summary judgment on Bank of Texas's counterclaims. Bank of Texas cites RJB Gas Pipeline Co. for the proposition that an unsuccessful claim for punitive damages related to a successful breach of contract claim does not support an award of fees under Oklahoma law. State Bank attempts to distinguish that case on the ground that the underlying claim for the punitive damages was a tort claim. We do not find this distinction persuasive because State Bank premised its claim for punitive damages on its conversion claim–i.e., a tort claim. State Bank also attempts to argue the district court's award of fees for the unsuccessful summary judgment motion and for the punitive damages claims were appropriate because of the district court's proper application of the inextricably intertwined doctrine. Pursuant to our holding above, we reverse the district court's award of attorneys' fees for the unsuccessful summary judgment motion and for the punitive damages claim.

### 3. Paralegal Fees

Under Texas law, a party may include in its request for attorneys' fees amounts for work performed by legal assistants if the "assistant perform[ed] work traditionally done by an attorney." Multi-Moto Corp. v. ITT Commercial Fin. Corp., 806 S.W.2d 560, 570 (Tex. App. 1990). The evidence presented must establish:

> (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.

Id. (citation omitted).

Oklahoma law also permits a party to recover charges for work performed by paralegals as an award of attorneys' fees. See, e.g., Taylor v. Chubb Group of Ins. Cos., 874 P.2d 806, 808-09 (Okla. 1994). Such charges are only appropriate if they are "clearly shown to have been made (1) for the delegated performance of substantive legal work, that (2) would otherwise have to be performed by a lawyer, (3) at a rate higher than that charged for the nonlawyers' time." Id. at 809. A party seeking an award of attorneys' fees "must plead and prove that the charges made for non-lawyer's time covered work that a lawyer would have had to perform but for the performance of such services by a legal assistant." Id. Also, the "total charges made for the legal assistant's services must be less than

the total charges would have been, had a lawyer performed the services." Id. In Taylor the court specified tasks which a legal assistant may perform, including interviewing clients, drafting pleadings and other documents, conducting legal research, scheduling depositions, coordinating and managing document production, locating and interviewing witnesses, organizing pleadings, trial exhibits, and other documents, preparing witness and exhibit lists, and assisting lawyers at trial. See id.

In its appeal, Bank of Texas claims that the award of attorneys' fees to State Bank included charges for work performed by paralegals that was not "perfected" for purposes of either Texas or Oklahoma law. Specifically, Bank of Texas claims the charges were inappropriate under Texas law because there was no indication as to the qualifications of the paralegals and the billing summaries include billing for "clerical services" that are not "substantive legal services." (Appellant's Br. B at 21.) The stated failure under Oklahoma law is that the trial testimony did not demonstrate the work performed by the paralegals would otherwise have been performed by an attorney and the billing inappropriately included charges for clerical duties performed by the paralegals.

After careful review of the record, we hold that insofar as the trial court properly awarded attorneys' fees, it did not abuse its discretion in awarding fees for work performed by paralegals under either Oklahoma or Texas law. The

qualifications of the paralegals and their performance of "substantive legal work" were substantiated in the fee application or testified to at trial. Although we agree with appellant that Oklahoma law places the burden of proof and pleading on the party requesting fees, after careful review of the fee application we conclude the work performed by paralegals for which fees were sought was all work that the Supreme Court of Oklahoma listed as proper for a legal assistant in Taylor, 874 P.2d at 809.

### 4. Section 1920 Costs

We review for abuse of discretion the district court's order upholding the clerk's taxation of costs. See Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1170 (10th Cir. 2000). "We will reverse subsidiary factual findings only if they are clearly erroneous." Jane L. v. Bangerter, 61 F.3d 1505, 1509 (10th Cir. 1995).

The district court affirmed the clerk's award to State Bank of $3,401.71 in costs made pursuant to 28 U.S.C. § 1920, concluding that the amount taxed as costs for copies was justified. We have reviewed the record and the parties' arguments and can find nothing to suggest the district court abused its discretion. Accordingly, we affirm the court's award of costs for copies. See, e.g., Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471, 1476 (10th Cir. 1997).

### 5. Oklahoma Commercial Code Costs

The clerk declined to award State Bank costs under the Oklahoma Commercial Code. Upon review of the clerk's suggested taxation of costs, the trial court awarded State Bank an additional $10,848.53 in costs as damages under Okla. Stat. Ann. tit. 12A, § 4-207. This additional award included costs incurred for telephone use, postage, computer research, faxes, Federal Express, binding, a private investigator, courier services, staff overtime, mileage incurred for attorneys to take depositions of Bank of Texas employees, and expert witnesses. However, the court denied State Bank costs for meals under any theory of recovery.

As an initial matter, we affirm the district court's denial of costs pursuant to Okla. Stat. Ann. tit 12A, § 3-411 and § 4-103 for the reasons stated in the discussion above concerning the award of attorneys' fees. However, because we find that the district court properly awarded State Bank costs as an element of <u>damages</u> for breach of transfer warranties under § 4-207, we affirm the district court's award of other costs. Although the official comments to § 4-207 indicate a reluctance to grant attorneys' fees as expenses, they do not demonstrate similar reluctance with regard to other expenses incurred in litigation as a result of breach of transfer warranties. We decline to reach whether any of the individually contested costs were properly awarded under § 1920 because we find that they were properly awarded under § 4-207.

**IV**

The judgment of the district court is **REVERSED** insofar as it found that attorneys' fees are not available under Texas law for State Bank's successful recovery on the cashier's check and insofar as it applied the inextricably intertwined doctrine to allow recovery of attorneys' fees under Oklahoma law. The judgment is **AFFIRMED** as to all other issues and this matter is **REMANDED** to the district court for proceedings consistent with this Opinion.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge